James E. Burden, Esq.
McClure Burden LLC
james@mcclureburden.com
www.mcclureburden.com
Phone: (862) 323.0422
Fax: (973) 561-9575

September 3, 2026

**VIA ECF**
Hon. Rukhsanah L. Singh
United States Magistrate Judge
United States District Court
District of New Jersey
402 East State Street
Trenton, NJ 08608

Re: **Patel v. Optum Medical Care of New Jersey, P.C., et al., No. 24-cv-6133 (RK) (RLS)**

Dear Magistrate Judge Singh:

This firm represents Plaintiff Aarti Patel, M.D. ("Plaintiff" or "Dr. Patel"), in the above-referenced action. Together with counsel for Defendants, we write pursuant to Your Honor's Docket Order, ECF No. 84, to update the Court as to the status of this matter and request that the Court address the discovery disputes outlined in the parties' joint letter dated April 24, 2026 (ECF No. 82, attached hereto as Exhibit 1) (the "April Letter") and raised herein.

As Your Honor will recall, the parties appeared before the Court on April 9, 2026 for a Settlement Conference, which was unsuccessful. On April 14, 2026, the Court directed the Parties to meet and confer on a Discovery Schedule (ECF No. 81). On April 15, 2026, Defendants served Plaintiff with supplemental discovery demands, to which Plaintiff objected. Ex. 1. The parties respectfully request that the Court address these outstanding discovery disputes at the upcoming status conference or at a time convenient to the Court. In addition to the issues raised in the April Letter, the parties also would like to discuss an issue that Defendants recently raised with Plaintiff.

**Plaintiff's Position:** For her part, Dr. Patel is anxious to resolve these matters so that the case may proceed to expert discovery and trial. As Your Honor may recall, prior to terminating Plaintiff's employment in February 2024, Defendants accused her of drinking on the job. Discovery has confirmed, and Defendants have now admitted, that this accusation was not the reason for Dr. Patel's termination. Even so, years after the fact, Defendants engaged a laboratory to conduct DNA testing on two whiskey bottles that were allegedly found in Optum's public restroom on the day that Plaintiff was accused of drinking on the job. The two whiskey bottles were left in the possession (and home) of Optum's office manager and Dr. Tekriwal's close colleague Bernadette Perrini (rather than with Defendants' counsel) for nearly two years until they

were handed over to the laboratory in or around January 2026 (after it had become clear that "drinking on the job" was not the reason for Dr. Patel's termination).

In April 2026, counsel for Defendants informed Plaintiff's counsel that the laboratory was "unable to develop a usable DNA profile from the whiskey bottles" because there was "insufficient biological materials on the bottles," but that they would "explor[e] whether fingerprints can be lifted from the bottles so an analysis/comparison can be conducted." On August 21, 2026, just hours after Plaintiff requested that the Court schedule a Status Conference (ECF No. 83), Defendants' counsel emailed Plaintiff's counsel for the first time in nearly four months to advise that the laboratory located a fingerprint on one of the bottles and, though the fingerprint is not clear enough for a fingerprint analysis, the laboratory located two partial DNA profiles from the print. Defendants requested that Dr. Patel swab her mouth for purposes of further testing.

Putting aside the significant chain of custody and spoliation issues that belated and collateral "bottle testing" would create, Plaintiff objects to this request as improper, intrusive, vexatious, and just another act of retaliation by these wrongdoers. Defendants have admitted that Dr. Patel was not terminated for drinking on the job, so, in Plaintiff's view, any further "DNA testing" would be irrelevant, vindictive, and tactical: the latest ploy to divert the court's attention from undisputed *relevant* matters. Contrary to Defendants' sole stated reason for their request, this case is no longer focused on Dr. Patel's "credibility," as much of the evidence supporting her claims derives from Defendants' own admissions, writings, and contradictions. The request is simply a pretext for delay and obfuscation that should be denied as such.

**Defendants' Position:** Plaintiff misstates the facts. First, Defendants never once argued Plaintiff's employment was terminated for drinking on the job. This is not the new revelation Plaintiff appears to claim it is. Second, it was Plaintiff who first broached the subject of having the bottles tested. Plaintiff abandoned that effort and now labels Defendants' pursuit of same a stalling tactic. This is entirely false. Moreover, the time that has elapsed between when the bottles were submitted for testing and now is attributable to the extensive efforts undertaken by the lab and beyond Defendants' control.

On January 5, 2026, Defendants' counsel informed Plaintiff's counsel via email that Defendants located a lab (Guardian Forensic Sciences in Pennsylvania) and intended to submit the bottles for DNA testing. At the lab's suggestion, the bottles were first tested for the presence of saliva to be used to develop a DNA profile. Importantly, Defendants' counsel invited Plaintiff's input and involvement in the process from the start. Plaintiff objected to Defendants' testing of the bottles and to Plaintiff's providing any DNA sample, and declined any involvement in the testing efforts. The parties then exchanged emails arguing over the relevancy of the bottles' testing and the results of same.

Defendants' counsel again invited Plaintiff's involvement in the testing process on January 14, 2026 (regardless of her objection, Plaintiff and her counsel could have still participated in the testing process), but Plaintiff's counsel did not respond. Accordingly, Bernadette Perrini securely packaged and shipped the bottles to the lab and they were delivered on January 15, 2026. Proof of mailing and pictures of the packaging were provided to Plaintiff.

On April 4, 2026, the lab reported it was unable to sufficiently detect the presence of saliva on the bottles. On April 7, 2026, Defendants' counsel informed Plaintiff's counsel of same and that "We are exploring whether fingerprints can be lifted from the bottles so an analysis/comparison can be conducted. Based on your prior email, I assume Dr. Patel would refuse to provide a fingerprint sample for a comparison to be done." Mr. Burden responded: "Thanks for the information." At this point, the lab had focused on detecting the presence of saliva, but then turned its attention to examining the bottles for fingerprints.

During the week of June 15, 2026, Defendants' counsel learned that the lab was unable to locate a usable fingerprint for purposes of running a fingerprint comparison. However, to defense counsel's understanding, the lab did locate a fingerprint sample from which a DNA profile could be developed. The lab reported on or about July 14, 2026, that it successfully developed two partial DNA profiles from the fingerprints located on the whiskey bottles and determined that each profile belongs to a female. On August 21, 2026, defense counsel updated Plaintiff's counsel on the foregoing testing efforts and again requested that Plaintiff submit a DNA sample via buccal swab. Plaintiff denied that request. This evidence is relevant for several reasons.

First, made clear before this Court, Plaintiff believes that Optum's entire investigation into her suspected drinking on the job was an effort to create pretext for her termination of employment. During the parties' December 5, 2025 conference before Your Honor, Mr. Burden made several representations that Dr. Tekriwal was determined to find a reason to terminate Plaintiff and insinuated he worked with Ms. Perini to fabricate grounds to do so. While that theory is farfetched to say the least, this obviously places the whiskey bottles located in the employee/staff only bathroom trash can – not a "public bathroom" as Plaintiff claims above – squarely at issue. Similarly, if Plaintiff's DNA is located on the bottles – which she clearly worries will be the case given her persistent refusal to provide a comparison sample – it would become impeachment evidence. Finally, such evidence is relevant to Defendants' after-acquired evidence defense. *See Mardell v. Harvleysville Life Ins. Co.*, 65 F.3d 1072, 1073-74 (3d Circ. 1995). Plaintiff may argue this evidence is not admissible at trial due to undescribed (and false) spoliation or chain of custody issues, but the standard for discovery is relevance, not admissibility. *See* Fed. R. Civ. P. 26(b)(1).

Defendants therefore request leave to file a Motion to Compel Plaintiff to submit a DNA sample to the lab via buccal swab for DNA comparison. While Defendants are unaware of any relevant Third Circuit precedent, there is precedent in the Second Circuit and others. For example, in *McGrath v. Nassau Health Care Corp.*, 209 F.R.D. 55 (E.D.N.Y. 2002), a sexual harassment case, the defendant successfully moved to compel a DNA sample from the plaintiff in order to impeach the plaintiff's testimony that she and the defendant never had a consensual sexual relationship. *Id.* at 65. The Court established a three-prong test for determining whether good cause exists to support such an order: (1) the DNA evidence is relevant; (2) there is a reasonable possibility that testing will yield a match; and (3) the privacy rights of the individual being tested will not be unduly affected. *Id.* Defendants request the opportunity to fully brief this issue and further demonstrate why this three-prong test is easily met here.

Should Your Honor require any additional information, please contact us and we will provide the Court with further information on this issue.

Respectfully submitted,

McClure Burden, LLC

By: *James E. Burden /s/*
JAMES E. BURDEN

JEB/

# Exhibit 1

James E. Burden, Esq.
McClure Burden LLC
james@mcclureburden.com
www.mcclureburden.com
Phone: (862) 323.0422
Fax: (973) 561-9575

April 24, 2026

**VIA ECF**
Hon. Rukhsanah L. Singh
United States Magistrate Judge
United States District Court
District of New Jersey
402 East State Street
Trenton, NJ 08608

Re: **Patel v. Optum Medical Care of New Jersey, P.C., et al.,**
**No. 24-cv-6133 (RK) (RLS)**

Dear Magistrate Judge Singh:

This firm represents Plaintiff Aarti Patel, M.D. ("Plaintiff" or "Dr. Patel"), in the above-referenced action. This case involves gender discrimination and retaliation claims arising under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq*. ("Title VII") and the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1, *et seq*. ("LAD"). Dr. Patel, a female cardiologist, asserts that she was fired by Optum after she complained about gender discrimination and a hostile work environment created by Dr. Tekriwal.

As Your Honor will recall, the parties appeared before the Court on April 9, 2026 for a Settlement Conference. After several hours, the Court ended the Settlement Conference with no settlement having been reached. On April 14, 2026, the Court directed the Parties to meet and confer on a Discovery Schedule. (ECF 81.) The next day, April 15, 2026, the Defendants served

Plaintiff with the following discovery demands: a Deficiency Letter; a Second Request for Production of Documents; a Second Set of Interrogatories; and First Requests for Admissions.

Plaintiff objected to these untimely discovery requests and, as discussed *infra*, prior to bringing this matter before the Court, the parties have met and conferred in an effort to resolve the outstanding disputes. Notwithstanding these efforts, various issues remain. In accordance with Your Honor's Civil Case Management Order, the disputes will be addressed as follows:

**(a) the request;**

**The Court Should Bar Defendants' Untimely Discovery Demands Made In its Deficiency Letter.**

As Your Honor will recall from our conference, I mentioned that the only open discovery was the Defendants' production of the DNA/fingerprint test results (which were done after Fact Discovery ended on December 19, 2025) and the scheduling of expert discovery. At that time, the Court did not invite the Defendants to re-open paper discovery after it ended in December, 2025. Pursuant to the Joint Discovery Plan submitted by the Parties, all written discovery was to be served by August 30, 2024. (ECF 31)

While Fact Discovery has been extended several times, on October 22, 2025, the Court directed that Fact Discovery be completed by December 19, 2025. (ECF 66) Thus, any Interrogatories, Requests for Production and/or Requests for Admissions relating to the Defendants' defenses should have been served and responded to prior to December 19, 2025. There is no reason why the Defendants did not seek the discovery they are currently seeking in the April 15, 2026 discovery requests prior to December 19, 2025.

Plaintiff complied with the December 19, 2025 deadline and completed the depositions of Defendants' witnesses, with the last deposition (Tracey Peterson) having been taken on December

2, 2025. Plaintiff completed the deposition of Dr. Gaurang Brahmbhatt, one of the decision-makers who fired Dr. Patel, on September 30, 2025. As discussed *infra*, Dr. Brahmbhatt testified that allegations about Plaintiff drinking on the job were never substantiated and were not part of the reason Optum fired Dr. Patel. As Your Honor will recall, on January 4, 2024, Dr. Mody texted Dr. Tekriwal within thirty (30) minutes of Dr. Patel making her internal hostile work environment claim to Human Resources, assuring Dr. Tekriwal that Optum was going to fire Dr. Patel. It appears that now that the Defendants' defenses have collapsed, as per the sworn testimony of Drs. Brahmbhatt, Tekriwal, Mody and Ms. Peterson, they are still searching for another pretext to justify Dr. Patel's termination more than two (2) years after the fact, while doubling down on the discredited "drinking" story.

Defendants' Deficiency Letter purports to raise several alleged issues with Plaintiff's prior discovery responses, which were served on October 14, 2024 – more than eighteen (18) months ago. Subsequent to October 14, 2024, Defendants did not claim that Plaintiff's discovery responses were deficient. Given these circumstances, we deem the Deficiency Letter to be a tactic and a sham.

First, Defendants are now seeking emails and texts messages allegedly sent by Plaintiff to various individuals regarding her "claims and allegations in this case." Defendants took Plaintiff's deposition on October 9, 2025, and did not explore these issues in the deposition. In addition, given that fact discovery has now closed it would be inappropriate – and constitute a classic fishing expedition -- to permit the Defendants to depose a number of unspecified people with whom Plaintiff may have spoken about her claims.

Next, Defendants are seeking communications between Plaintiff and a recruiter named Dale Linton, claiming that these communications are relevant to Plaintiff's mitigation efforts.

Plaintiff has continuously produced documents regarding her mitigation efforts, and thus this request is not only untimely but irrelevant and vexatious.

Next, Defendants are seeking addresses for various individuals identified in Plaintiff's Interrogatory Answer No. 2 as having knowledge of her claims. Plaintiff served this answer on October 14, 2024, and Defendants did nothing to investigate it until now. Again, this request is being made long after the Court directed the parties to complete Fact Discovery, December 19, 2025, and now four (4) months later Defendants are seeking to reopen Fact Discovery, without cause, and depose various individuals regarding their communications with Plaintiff.

Next, Defendants are seeking production of a text message Plaintiff sent to Lisa Gordon about working at Cayuga Health in Ithica, New York. Plaintiff mentioned this text message during her deposition in October 2025 – over six months ago. Again, this demand is belated and should have been served many months ago. Moreover, it is irrelevant as Plaintiff mitigated her economic damages by working at Cayuga and receiving a job offer at Cayuga, only to have the job offer rescinded under suspicious circumstances. In other words, Plaintiff actively pursued employment at Cayuga only to have Cayuga reject her. Defendants have failed to provide any relevant basis for such a belated request, particularly since they have been aware of the existence of the text message for many months.

Defendants are also seeking data from a Fitbit, which Plaintiff wore in October 2025, claiming that data related to her sleep and exercise patterns and caloric intake is relevant to her emotional distress claim. Plaintiff objects to this request as being overly intrusive and, quite frankly, rather desperate and silly. Moreover, it is untimely, as Defendants were aware of the Fitbit at the time of her deposition in October 2025 and failed to make such request until over six months later. Plaintiff is asking the Court to bar the Defendants' belated requests made in their April

15, 2026 Deficiency Letter because these requests are being made long after the Court directed the parties to complete Fact Discovery (ECF 66) and Plaintiff has already taken the deposition of Defendants' witnesses. More than two years after the fact, Defendants are still attempting to come up with a legitimate, non-retaliatory reason to justify their termination of Plaintiff.

**(b) the response;**

Defendants request that the Court extend the fact discovery period for an additional thirty days to enable Defendants to obtain clearly-relevant information from Plaintiff (as set forth in its April 15 deficiency letter and discovery requests), and to set a deadline by which to issue any third-party subpoenas for documents and/or depositions. Though her testimony and other record evidence does not support it, Plaintiff has recently made clear through her pre-settlement conference settlement demand, she seeks severe emotional distress damages in connection with her claims.

The Court maintains discretion, upon a showing of good cause, to revise scheduling orders and extend the fact discovery period. Fed. R. Civ. P. 16(b)(4); L. Civ. R. 16.1(a)(2). Good cause can be demonstrated where, among other things, the movant is unable to comply with a scheduling order "due to any mistake, excusable neglect or any other factor which might understandably account for failure to counsel to undertake to comply with the Scheduling Order." *Williams v. Sullivan*, No. 084210, 2011 WL 2119095, at *4 (D.N.J. May 20, 2011) (quoting Fed R. Civ. P. 16(b) advisory committee note to 1983 Amendment). Defendants can establish good cause here.

Through the December 19, 2025 fact discovery deadline, the parties were engaged in discovery disputes raised by Plaintiff that were ultimately addressed by the Court on December 5, 2025 (ECF 76) and March 6, 2026 (ECF 80). Following the December 5 hearing, the Court scheduled a settlement conference on January 14, 2026 (ECF 79) for April 9, and Defendants opted

to forgo further discovery efforts pending that conference. Following the unsuccessful settlement conference, the Court requested the parties to submit a proposed schedule for "any further discovery" by April 24, 2026 (ECF 81). Your Honor may recall Defendants mentioning an intent to pursue fact discovery items as that conference ended.

Defendants' April 15 deficiency letter (attached hereto as **Defendants' Exhibit A**) identifies various issues with Plaintiff's discovery responses that stem back to October 14, 2024. Parties have an ongoing obligation to supplement their discovery responses and document productions where a party learns that such responses are incomplete or incorrect. Fed. R. Civ. P. 26(e). As this case proceeds to dispositive motions and trial, Defendants have simply identified various issues with Plaintiff's initial discovery responses and document productions related to Plaintiff's alleged damages (not her termination of employment as Plaintiff asserts) that Defendants request be addressed (and that Plaintiff has an obligation to provide on her own). The specific categories are:

- Communications with witnesses identified to support Plaintiff's alleged emotional distress: as detailed in Defendants' April 15 deficiency letter, Plaintiff identified several individuals she claims have knowledge concerning her alleged emotional distress. Defendants' initial discovery requests, served on September 6, 2024, requested each of their last known addresses (and Plaintiff was required to provide that on her own per Rule 26(a)(1)(A)(i)) and any communications with these witnesses. Plaintiff's document production does not contain any such communications and Plaintiff's discovery responses do not indicate whether she searched for such communications. Further, despite her October 2025 deposition testimony which suggested a "garden variety" claim at best, Plaintiff recently disclosed that she continues to seek significant emotional distress damages. Defendants are therefore entitled to depose Plaintiff's witnesses on this topic and would work to do so expeditiously.

- Communications with Dale Linton: Plaintiff produced various emails with Mr. Linton, a recruiter at Weatherby Healthcare who assisted Plaintiff in her subsequent job search. Defendants simply request that Plaintiff confirm whether she produced all results of her search. Otherwise, Plaintiff should supplement her production.

- Text message to Lisa Gordon: this text was formally requested during Plaintiff's October deposition. Defendants' following up on that now is not belated.

- Fitbit: Plaintiff testified she purchased and wore a Fitbit around the time of her deposition in October 2025. Fitbits track certain user health-related information – such as caloric intake and exercise and sleeping patterns – that is unquestionably relevant to Plaintiff's alleged emotional distress. Defendants already served discovery requests for information related to Plaintiff's alleged emotional distress and Plaintiff therefore has an obligation to supplement her discovery responses and document productions. Fed. R. Civ. P. 26(e).

In short, Defendants' April 15 deficiency letter simply seeks information already requested from Plaintiff during discovery and not provided. Accordingly, Defendants have established good cause.

Lastly, the recent extension setting a fact discovery deadline of December 19, (ECF 66-67) did not specify that third-party subpoenas were also to be served by that date. Defendants plan to serve third-party subpoenas on Dr. Laura Skivone (Plaintiff's treating provider), and no more than three additional witnesses pending receipt of the requested contact information. Such depositions will inform any expert discovery related to Plaintiff's alleged emotional distress, so Defendants suggest they take place before any related expert discovery.

**(c) efforts to resolve the dispute;**

Prior to bringing this discovery dispute before the Court, on April 16, 2026, the parties met and conferred in an effort to resolve these issues.

**(d) the position of the complaining party;**

As set forth above, Plaintiff believes that the Defendants are seeking to re-open fact discovery long after it closed and long after their fact witnesses were deposed in an effort to "discover" a legitimate reason for the Plaintiff's termination. There was no legitimate reason for

Plaintiff's termination and Defendants should not be permitted to move the goal posts after their own witnesses' testimony has completely undermined their defenses.

**(e) the position of the responding party; and, if applicable,**

Plaintiff's mischaracterization of testimony is irrelevant to the disputes at issue. Defendants are simply following up on discovery that Plaintiff should have already provided.

**(f) the efforts of a party to contact a non-responsive party to meet and confer and submit the joint letter.**

As set forth in sub-section c above, the parties have met and conferred in an effort to resolve this issue but despite those efforts, serious issues, as discussed above, remain outstanding.

**(a) the request;**

**The Court Should Bar the Defendants' Second Request for Production of Documents.**

On April 15, 2026, months after the Court directed the parties to complete Fact Discovery (ECF 66), Defendants served Plaintiff with a Second Request for Production of Documents. This Second Request for Production sought the following: copies of bank and/or debit card and/or credit card statements for Plaintiff for the month of January 2024; and all data from Plaintiff's mobile phone and/or wearable devices showing locations visited during the timeframe of January 22, 2024 through January 26, 2024.

These requests relate to Defendants' claim that Plaintiff drank on the job on January 26, 2024. This claim collapsed during discovery as no defense witness has testified that they observed Plaintiff drink on the job on January 26, 2024. In addition, Dr. Brahmbhatt, one of the decision-makers who fired Plaintiff, testified that the allegations about drinking on the job were not the reason that Optum fired Plaintiff. Instead, Dr. Brahmbhatt testified that Plaintiff was fired because

she returned to work after she was told not to come back to the office and that she allegedly interfered in Defendants' putative "investigation". Both of these asserted reasons are demonstrably false. Thus, Defendants cannot now rewrite Dr. Brahmbhatt's or Dr. Mody's sworn testimony and change their story to concoct a new reason to justify their February 12, 2024 termination of Plaintiff's employment by claiming that drinking on the job was the real reason she was fired.

Defendants also cannot claim that the drinking on the job allegation falls within the "after-acquired evidence" doctrine because they knew about the claim before Dr. Brahmbhatt and others decided to fire her on February 12, 2024. Ms. Perrini fabricated the claim on January 26, 2024 and Dr. Brahmbhatt was advised of the allegation that same day. Thus, the drinking on the job story is not after-acquired evidence. In fact, the written termination notice that Dr. Patel received included the reason for her termination and stated only that she was being terminated pursuant to Article 10(b)(xii) of her Employment Agreement, which provided for for-cause termination when an employee fails to comply with Optum's policies or reasonable directions of management. Tellingly, the termination letter did not refer to the provision of the Employment Agreement that explicitly prohibits use of alcohol on the job. Had Dr. Patel been terminated due to alcohol use, surely her termination notice would have cited that provision.

Given that the allegation that Plaintiff drank on the job was not a reason for her termination, an untimely fishing expedition into her bank account statements, credit card statements, and locations she traveled in January 2024 are irrelevant, overly intrusive and in the circumstances of this case (including Defendants' admissions), a flagrant abuse of the discovery process prescribed by this Court.

**(b) the response;**

Defendants' Second Request for Production of Documents (attached hereto as **Defendants' Exhibit B**) is narrowly tailored to seek information on two germane issues: (1) whether the whiskey bottles located in Optum's office trash can on January 26, 2024 belonged to Plaintiff and (2) whether Plaintiff left the premises on January 26, 2024, as witnessed by office staff, which allegation Plaintiff denies. Defendants were hopeful that DNA testing would have conclusively decided the first issue but Defendants only recently learned – a few days before the April 9 conference – that such testing was unsuccessful. While Defendants are waiting for the results of a fingerprint exam, it appears there is a low probability of finding testable fingerprints. Thus, good cause exists for service of these discovery requests now. Notably, the requests are narrowly-tailored to seek information germane to the case.

Primarily, Plaintiff denies that the whiskey bottles were hers. Her counsel has argued to the Court on several occasions that Defendants essentially manufactured a false allegation that Plaintiff consumed alcohol at work on January 26, 2024. While that theory is farfetched to say the least, this clearly places the whiskey bottles located in the trash at issue and Defendants are entitled to discovery to rebut Plaintiff's conspiracy theory. Plaintiff's whereabouts during that week are also crucial to the extent they reveal that (i) Plaintiff visited a store that sold shooters of Fireball whiskey or (ii) Plaintiff left the premises on January 26, 2024, which would bolster the credibility of the office staff members who reported same. Such evidence would therefore be paramount in assisting any future jury in evaluating witness credibility.

Further, considering Plaintiff denies the bottles were hers or that she left the office premises on January 26, 2024, any evidence to the contrary is proper impeachment evidence the factfinder should hear.

Finally, such evidence is relevant to Defendants' after-acquired evidence defense. In other words, if Defendants establish that Dr. Patel was indeed drinking while on duty, or lied to investigators about her whereabouts that day, Defendants would be entitled to argue that they would have fired Dr. Patel for either or both of those offense(s) and any back pay would therefore be limited to the date the wrongdoing was discovered. *See Mardell v. Harvleysville Life Ins. Co.*, 65 F.3d 1072, 1073-74 (3d Circ. 1995).

**(c) efforts to resolve the dispute;**

On April 16, 2026 the parties met and conferred in an effort to resolve these issues.

**(d) the position of the complaining party;**

As set forth above, Plaintiff requests that the Court bar the Defendants' Second Request for Production.

**(e) the position of the responding party; and, if applicable,**

Plaintiff should be directed to respond to Defendants' Second Request for Production.

**(f) the efforts of a party to contact a non-responsive party to meet and confer and submit the joint letter.**

As set forth in sub-section c above, the parties have met and conferred in an effort to resolve this issue but despite those efforts, serious issues, as discussed above, remain outstanding.

**(a) the request;**

**The Court Should Bar Defendants' Second Set of Interrogatories.**

On April 15, 2026, Defendants served Plaintiff with a Second Set of Interrogatories. These Interrogatories sought: the mobile phone number and service carrier Plaintiff used to place a call as depicted in PATEL 00000148; and asked Plaintiff to identify all recruiters who expressed

reluctance to move forward with placing Plaintiff because of her pending claims against Optum and Dr. Tekriwal.

PATEL 00000148 – which was produced on October 14, 2024 – reflected calls Plaintiff had with Dr. Contino Chase on January 26, 2024 at 10:29 a.m. and 11:06 a.m., the morning on which she was accused of drinking on the job. Again, this belated request relates to that baseless claim. Obviously, Defendants intend to subpoena Plaintiff's cell phone records in pursuit of this discredited claim – which, as per the testimony of Drs. Brahmbhatt and Mody, was not the reason Optum fired her. For the same reasons set forth above, the Court should bar Defendants' efforts to move the goal posts and resurrect a false reason for Plaintiff's termination more than two years after she was fired. Desperation does not constitute "good cause" to reopen discovery.

With respect to the identities of any recruiters who expressed reluctance to place Plaintiff, this Request is woefully untimely as it is being made months after the Court directed the parties to complete Fact Discovery, December 19, 2025. (ECF 66) This request refers to Plaintiff's deposition testimony from six months ago. Moreover, if the Court permits the Defendants to reopen Fact Discovery this will substantially delay the prosecution and trial of this matter, which seems to be Defendants' strategy at this point.

**(b) the response;**

Defendants' Second Set of Interrogatories (attached hereto as **Defendants' Exhibit C**) contain two interrogatories and, thus, the burden on Plaintiff in responding is minimal. The first interrogatory seeks Plaintiff's cell phone number used to place a call on January 26, 2024, and service provider. This information would allow Defendants to subpoena Plaintiff's cell phone provider and identify the location from which that call was made. As explained above, Plaintiff's whereabouts on this date are relevant. Plaintiff testified she was on the office premises (in the

parking lot) during that call, and Optum's office staff reported that Plaintiff left the premises in her car. Should this matter proceed to trial, such evidence would help the jury evaluate witness credibility.

The second interrogatory seeks information directly related to Plaintiff's efforts to mitigate. Plaintiff testified at deposition that several unknown recruiters told her the present litigation was a barrier to employment barrier. Plaintiff could not recall the names of these alleged recruiters at deposition. Defendants simply seek to ascertain the names and contact information of such recruiter(s) as they may be relevant witnesses at any trial. As has become recently clear from Plaintiff's pre-settlement conference settlement demand, Plaintiff and Defendants have a very different view of Plaintiff's mitigation efforts and the effect of same on her back pay claim. Defendants therefore have good cause to seek such information now.

**(c) efforts to resolve the dispute;**

Prior to bringing this discovery dispute before the Court, on April 16, 2026 the parties met and conferred in an effort to resolve these issues.

**(d) the position of the complaining party;**

As set forth above, the Court should bar Defendants' Second Set of Interrogatories.

**(e) the position of the responding party; and, if applicable,**

Plaintiff should be required to respond to Defendants' Second Set of Interrogatories.

**(f) the efforts of a party to contact a non-responsive party to meet and confer and submit the joint letter.**

As set forth in sub-section c above, the parties have met and conferred in an effort to resolve this issue but despite those efforts, serious issues, as discussed above, remain outstanding.

**(a) the request;**

**The Court Should Bar Defendants' Requests for Admissions.**

On April 15, 2026, Defendants served Plaintiff with Requests for Admissions. These Requests for Admissions asked Plaintiff to admit the following: that she did not disclose to anyone at Optum the existence of a medical malpractice litigation filed against her in New Jersey State Court during her onboarding and hiring process; that she did not disclose to anyone at Optum the medical malpractice litigation between January 1, 2023 and February 12, 2024; and that she did not request to be excused from her restrictive covenant in her employment agreement with Optum after her termination.

Much like the baseless drinking on the job allegation, now that Defendants' witnesses, and particularly Drs. Brahmbhatt and Mody have been deposed, Defendants are seeking yet another reason to justify their February 12, 2024 termination of Plaintiff by claiming that they would not have hired her or would have fired her had they known about the medical malpractice Complaint. The Court should not countenance this ruse.

Moreover, the discovery already exchanged between the parties renders these Requests for Admissions moot as well as bogus. First, in PATEL 00000167- PATEL 00000173, Plaintiff clearly disclosed the existence of the medical malpractice claim to Defendants in September 2024, as part of her onboarding process and in connection with her application for medical malpractice insurance.

Next, are we really to believe that Optum and Dr. Tekriwal, who expressed in writing his intent to destroy Plaintiff and her medical career after her termination, would really waive the restrictive covenant and permit Plaintiff to work within a ten (10) mile radius of Manahawkin

and/or Toms River, New Jersey? Again, this is irrelevant because Plaintiff did not violate the restrictive covenant after she was fired – she was blacklisted by Dr. Tekriwal and forced to relocate to Ithaca, New York for her next job – more than ten (10) miles from the Optum offices in which she worked.

**(b) the response;**

Defendants' Requests for Admission (attached hereto as **Defendants' Exhibit D**) are simple and seek to streamline two issues. First, Plaintiff never disclosed the existence of a pending medical malpractice case against her to Optum either during her onboarding or hiring as required by her employment contract. Her failure to do so provides Optum another after-acquired evidence defense, as it can argue that Plaintiff's employment contract could have been cancelled earlier than February 2024.

Second, Plaintiff never sought a waiver of any restrictive covenants contained in her employment contract following her separation from Optum. Yet, she reported to various prospective employers that she was under such restrictions and voluntarily rescinded hospital privileges based on same. Such evidence goes directly to Plaintiff's efforts to mitigate her damages and Plaintiff's burden in responding to these narrow requests is minimal to say the least.

**(c) efforts to resolve the dispute;**

Prior to bringing this discovery dispute before the Court, on April 16, 2026 the parties met and conferred in an effort to resolve these issues.

**(d) the position of the complaining party;**

As set forth above, the Court should bar the Defendants' Requests for Admissions.

**(e) the position of the responding party; and, if applicable,**

Plaintiff should be required to respond to Defendants' Requests for Admission.

**(f) the efforts of a party to contact a non-responsive party to meet and confer and submit the joint letter.**

As set forth in sub-section c above, the parties have met and conferred in an effort to resolve this issue but despite those efforts, serious issues, as discussed above, remain outstanding.

**(a) the request;**

**The Court Should Direct the Defendants to Provide the Plaintiff with the Test Results of the DNA and Fingerprint Analysis of the Fireball Bottles.**

Plaintiff respectfully requests that the Court direct that the Defendants provide Plaintiff with the test results from the DNA and fingerprint analysis of the Fireball bottles. We understand from Defendants that the DNA testing found that there was no DNA on the Fireball bottles.

With respect to the fingerprint analysis, if there are any fingerprints found on the Fireball bottles, we respectfully request that the Court Order that all Optum employees who were present at work on January 26, 2024 provide fingerprints in order to determine who, if anyone, touched the Fireball bottles. In the event that there are no fingerprints on the Fireball bottles, we simply request that the Court Order the Defendants to provide Plaintiff with the test results so those results can be admitted into evidence if Defendants try to resurrect the "drinking on the job" story.

**(b) The response;**

Defendants do not yet have any report from the lab that conducted the DNA testing. That lab is currently assessing whether the bottles contain testable fingerprints. Once that testing is completed, the lab will provide a report and Defendants will, of course, produce same to Plaintiff.

**(c) efforts to resolve the dispute;**

Prior to bringing this discovery dispute before the Court, on April 16, 2026, the parties met and conferred in an effort to resolve these issues.

**(d) the position of the complaining party;**

As set forth above, Plaintiff simply is seeking the test results and once those results have been provided, we can set deadlines for expert discovery.

**(e) the position of the responding party; and, if applicable,**

There is no dispute on this issue.

**(f) the efforts of a party to contact a non-responsive party to meet and confer and submit the joint letter.**

As set forth in sub-section c above, the parties have met and conferred in an effort to resolve this issue but despite those efforts, serious issues, as discussed above, remain outstanding.

Should Your Honor require any additional information, please contact us and we will provide the Court with further information on this issue.

Respectfully submitted,

McClure Burden, LLC

By: *James E. Burden /s/*
JAMES E. BURDEN

JEB/

Case 3:24-cv-06133-RK-RLS Document 85 Filed 09/24/26 Page 28 of 44 PageID: 456

# DEFENDANTS' EXHIBIT A

Seyfarth

**Seyfarth Shaw LLP**
620 Eighth Avenue
New York, New York 10018
**T** (212) 218-5500
**F** (212) 218-5526

jvento@seyfarth.com
T (212) 218-5548

www.seyfarth.com

April 15, 2026

**VIA E-MAIL**

James E. Burden, Esq.
McClure Burden LLC
25 Pompton Avenue, Suite 101
Verona, NJ 07044
james@mcclureburden.com

**Re: Patel v. Optum Medical Care of New Jersey, P.C., et al.**
**Civil Action No.: 3:24-cv-06133**

Dear Mr. Burden:

We write on behalf of Defendants regarding deficiencies in Plaintiff's document production and discovery responses. Please consider this letter as an effort to meet and confer pursuant to Local Civil Rule 37.1(a)(1) to resolve discovery disputes prior to motion practice. Each of the below items must be addressed by April 30, 2026.

## I. Plaintiff's Document Production

We cannot locate any documents produced by Plaintiff bearing bates numbers PATEL 745-877. Please provide those documents.

## II. RFP Nos. 1 & 20; Interrogatory No. 2; Documents Related to Plaintiff's Alleged Damages

Defendants' Request for Production ("RFP") Nos. 1 and 20 sought "documents," which was defined to include communications including, without limitation, emails and text messages, related to Plaintiff's alleged damages. Interrogatory No. 2 asked Plaintiff to identify all individuals "with whom Plaintiff has discussed her claims and allegations in this case including, without limitation, any person with whom Plaintiff has corresponded about this matter via email, text message, instant message, or by other electronic means."

Plaintiff's response to Interrogatory No. 2 identifies the following individuals: Brian Greene, Kalpana Patel, Dr. Sandhya Dhruvakumar, Dr. Christinia Wjasow, Denise Shields, Jimmy Voelbel, Lynda Saponara and Dr. Ashok Veldanda. Additionally, Plaintiff's Rule 26 Initial Disclosures identify several individuals who Plaintiff claims have knowledge of her "emotional distress caused by the circumstances relevant to this action[,]" namely: Dr. Sandhya Dhruvakumar,

Denise Shields, Jimmy Voelbel, Dr. Christinia Wjasow and Briane Greene. Plaintiff's Initial Disclosures also state that Plaintiff has in her possession, custody or control "Documents concerning Plaintiff's emotional distress and treatment thereof."

However, Plaintiff's document production does not contain any communications with these individuals that relate to Plaintiff's alleged emotional distress, and Plaintiff's responses to the RFPs do not indicate whether Plaintiff ever searched for same. Please have your client search for any communication – including emails, text messages, social media communications, and other app-based communications (e.g., Whats App, Signal, etc.) with the above individuals that relate to Plaintiff's claims or alleged emotional distress she attributes to her employment with Optum or separation therefrom, and produce all responsive results.

**III. <u>RFP Nos. 13 & 37; Communications with Dale Linton</u>**

RFP Nos. 13 and 37 together requested documents and communications related to Plaintiff's efforts to mitigate her damages and locate subsequent employment. We understand from her deposition and from Plaintiff's document production that Plaintiff communicated with a Weatherby recruiter named Dale Linton. Please confirm that Plaintiff has searched for and produced all relevant communications with Mr. Linton. If not, please have your client do so and produce all responsive results.

**IV. <u>Interrogatory No. 2; Witness Contact Information</u>**

As requested by Interrogatory No. 2 and as required by Federal Rule of Civil Procedure 26(a)(1)(A)(i), please provide the last known addresses for Lynda Saponara, Dr. Ashok Veldanda, Denise Shields and Jimmy Voelbel, who were identified in Plaintiff's Rule 26 Initial Disclosures and in response to Interrogatory No. 2 as witnesses with knowledge of Plaintiff's claims.

**V. <u>Documents and Information Identified During Plaintiff's Deposition</u>**

Plaintiff testified that she has in her possession a text message she sent Lisa Gorton at Cayuga about working there. *See* Plaintiff's Dep. at 286:10-287:15. Please produce that text message.

Additionally, Plaintiff testified that she purchased and wore a Fitbit around the time of her deposition in October 2025. *See* Plaintiff's Dep. at 297:8-15. Any health tracking information on that Fitbit – including without limitation Plaintiff's sleep and exercise patterns and caloric intake – is relevant to Plaintiff's claim to emotional distress and therefore within the purview of RFP Nos. 1 and 20. Please produce same.

* * * * * *

If Plaintiff is unwilling to comply with the foregoing requests, please provide your availability for a pre-motion meet and confer discussion by April 30, 2026. Of course, Defendants

reserve the right to raise additional deficiencies with Plaintiff's discovery responses and document production.

Very truly yours,

SEYFARTH SHAW LLP

*/s/ Joseph M. Vento*
Joseph M. Vento

cc: Nicholas De Baun, Esq. (via email)
Catherine Weiss, Esq. (via email)
Martin Hyman, Esq. (via email)

# DEFENDANTS' EXHIBIT B

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| AARTI PATEL, M.D.,<br>Plaintiff,<br>-vs-<br>OPTUM MEDICAL CARE OF NEW JERSEY, P.C., and MAHESH TEKRIWAL, M.D.,<br>Defendants. | Civil Action No.: 3:24-cv-06133<br>**DEFENDANTS' SECOND REQUEST FOR THE PRODUCTION OF DOCUMENTS TO PLAINTIFF** |

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure and the Local Rules of this Court, Defendants Optum Medical Care of New Jersey, P.C. ("Optum"), and Mahesh Tekriwal, M.D. ("Dr. Tekriwal") (together, "Defendants"), by and through their attorneys, Seyfarth Shaw LLP, hereby request that Plaintiff Dr. Aarti Patel ("Plaintiff") produce the following documents at the offices of Seyfarth Shaw LLP, 620 Eighth Avenue, 32nd Floor, New York, New York 10018, within thirty (30) days after the date of service as follows:

**DEFINITIONS AND INSTRUCTIONS**

1. This request for documents is addressed to Plaintiff, her agents, representatives, or attorneys, or any of them. If the requested documents are known to Plaintiff to exist, but are not in the possession, custody, or control of Plaintiff, her agents, representatives, or attorneys, or any of them, Plaintiff shall so indicate or produce documents that show the name of the person or entity in whose custody such documents presently reside.

2. The terms "Plaintiff," "You," or "Your" refer to Plaintiff Dr. Aarti Patel as well as all persons acting in the interest of, or on her behalf in this action, including attorneys, investigators, consultants, etc.

3. “Person” shall mean and include a natural person, individual, partnership, firm, corporation, or any kind of business or legal entity, its agents or employees.

4. The term “communication” shall mean every form of written and non-written communication between or involving one or more persons, by whatever means accomplished.

5. The term “document” includes, by way of illustration only and not by way of limitation, the following, whether printed or reproduced by any process, or written, and/or produced by hand, and whether or not claimed to be privileged or otherwise excludable from discovery, namely: notes; correspondence; e-mails; text messages; communication of any nature; telegrams; memoranda; notebooks of any character; summaries or records of personal conversations; diaries; routing slips or memoranda; calendars; reports; publications; photographs; minutes or records of meetings; transcripts of oral testimony or statements; reports and/or summaries of interviews; reports and/or summaries of investigations; agreements, contracts, and collective bargaining agreements, including all revisions and/or modifications thereof; reports and/or summaries of negotiations; court papers; brochures; pamphlets; press releases; drafts of, revisions of drafts of, and/or translations of any documents; tape recordings; record and dictation belts; audio tapes and video tapes. Any document with any marks on any sheet, back, or side thereof, including by way of illustration only and not by way of limitation initials, stamped indicia, any comment, or any notation of any character, not part of the original text, or any reproduction thereof, is to be considered a separate document for purposes of this Request.

6. The term “concerning” shall mean relating to, referring to, describing, evidencing, or constituting.

7. If any document responsive to any request has been lost, mutilated, or destroyed, Plaintiff shall submit in lieu of each such document a written statement which:

(a) describes in detail the nature of the document and its contents;

(b) identifies the person who prepared or authored the document and, if applicable, the person or persons to whom the document was sent;

(c) specifies the date on which the document was prepared or transmitted; and

(d) specifies, if possible, the date on which the document was lost or destroyed, and, if destroyed, the conditions of and reasons for such destruction, and the persons requesting and performing the destruction.

8. If there are no documents in Plaintiff's possession, custody, or control that are responsive to a particular request, but Plaintiff believe that such documents exist, so state and identify each such document and state to which request(s) the documents are responsive.

9. Any document responsive to any request should be identified as being responsive to the specific request involved. If the same document is responsive to more than one request, all requests to which it is responsive should be identified.

10. Consistent with the Federal Rules of Civil Procedure, these document requests shall be continuing to require Plaintiff to supplement her responses when and if she obtains any further documentation subsequent to the service of her responses.

11. In construing these requests: (a) the singular shall include the plural and the plural shall include the singular; (b) the masculine, feminine, or neuter pronouns, respectively, shall include the other genders; (c) "and" as well as "or" shall be construed either disjunctively or conjunctively so as to bring within the scope of these requests all documents that might otherwise be construed to be outside their scope; and (d) the present tense of a verb shall include its past tense and vice versa.

12. Unless otherwise stated, Plaintiff shall produce documents concerning the time

period of August 1, 2023 through the present (the "Relevant Time Period"), unless documents outside that time period relate to Plaintiff's claims asserted within Plaintiff's Complaint or Defendants' defenses.

**<u>CLAIMS OF PRIVILEGE</u>**

If any document falling within the description contained in any of the following requests is withheld under a claim of privilege, Plaintiff shall serve upon the undersigned attorneys for Defendants a written list of the withheld documents, including the following information as to each such item:

(a) its date;

(b) the name(s) of the person(s) or other entity(ies) who or which drafted, authorized, or prepared it;

(c) its title;

(d) the type of document (*e.g.*, letter, memorandum, notes of meetings, conversations);

(e) the name(s) of each person(s) or other entity(ies) to whom it was addressed;

(f) the name(s) of each person(s) or other entity(ies) to whom the item or any copy or reproduction thereof was ever directed, addressed, sent, delivered, mailed, given, or in any other manner disclosed;

(g) the subject matter of the document; and

(h) a statement of the ground or grounds on which each such document is considered to be privileged from production.

**REQUESTS FOR PRODUCTION**

44. Bank statements for any debit card(s) or credit card(s) used by Plaintiff for the month of January 2024.

45. To the extent not included above, all bank statements for any bank accounts used by Plaintiff for the month of January 2024.

46. All data from Plaintiff's mobile phone or any wearable devices (including Fitbits or Apple Watches) showing locations visited during the timeframe of January 22, 2024 through January 26, 2024. If Plaintiff has an iPhone, she is specifically directed to follow these instructions: Settings > Privacy & Security > Location Services > System Services > Significant Locations & Routes, and produce a screenshot of what appears on that page.

Dated: April 15, 2026

By: *<u>/s/ Joseph M. Vento</u>*
Joseph M. Vento
Seyfarth Shaw LLP
620 Eighth Avenue, 32nd Floor
New York, NY 10018
Tel: (212) 218-5500
Fax: (212) 218-5526
jvento@seyfarth.com

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I, Joseph M. Vento, hereby certify that on the below date I caused the foregoing Defendants' Second Request for Production of Documents to be served on counsel of record for Plaintiff in the above-captioned matter by email as follows:

James E. Burden, Esq.
McClure Burden LLC
25 Pompton Avenue, Suite 101
Verona, NJ 07044
james@mcclureburden.com

Martin Hyman, Esq.
Catherine Weiss Butto, Esq.
Spencer Fane
711 Third Avenue, Suite 1700
New York, NY 10017
mhyman@spencerfane.com
cbutto@spencerfane.com

*/s/ Joseph M. Vento*
Joseph M. Vento

Dated: April 15, 2026

# DEFENDANTS' EXHIBIT C

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

AARTI PATEL, M.D.,

Plaintiff,

-vs-

OPTUM MEDICAL CARE OF NEW JERSEY, P.C., and MAHESH TEKRIWAL, M.D.,
Defendants.

Civil Action No.: 3:24-cv-06133-RK-RLS

**DEFENDANTS' SECOND SET OF INTERROGATORIES TO PLAINTIFF**

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure and the Local Rules of this Court, Defendants Optum Medical Care of New Jersey, P.C. ("Optum"), and Mahesh Tekriwal, M.D. ("Dr. Tekriwal") (together, "Defendants"), by and through their attorneys, Seyfarth Shaw LLP, hereby request that Plaintiff Dr. Aarti Patel ("Plaintiff") provide sworn answers to the following interrogatories to the offices of Seyfarth Shaw LLP, 620 Eighth Avenue, 32nd Floor, New York, New York 10018, within thirty (30) days after the date of service as follows:

## INSTRUCTIONS

1. These interrogatories are addressed to Plaintiff, her agents, representatives, attorneys, or any of them. These interrogatories are deemed to be continuing, requiring Plaintiff to provide supplemental answers setting forth any additional information within the scope of these interrogatories as may be acquired by Plaintiff and her agents and attorneys. Such supplemental responses shall be served upon the undersigned counsel for Defendants promptly after receipt of such information.

2. The full text of the interrogatory to which each answer is intended to respond is to be restated immediately preceding such answer.

3. Where identification of a person is requested, state the person's name, address and telephone number, or if such information is unavailable, state any other available means of identifying such person.

4. Where identification of a document is requested, the following information shall be provided:

(a) the date that the document bears or, if the document is undated, the date on which the document was drafted or originated;

(b) the identity of the author or originator and, if different, of the signer of the document;

(c) where the document is located;

(d) the identity of each person to whom the document or a copy thereof was addressed or distributed; and

(e) the type of document (*e.g.*, letter, memorandum, schedule, report, graph, chart, press release or telegram).

5. If any of the foregoing information is not available, state any other available means of identifying the document. In lieu of the information requested in subparts (a) through (e), inclusive, of Instruction No. 4, Plaintiff may produce a true and correct copy of the document with Plaintiff's responses to the interrogatories.

6. Where identification or description of an oral communication, event, allegation or instance is requested, the following information shall be provided:

(a) the substance of such communication and/or instance;

(b) the parties to such communication and/or instance;

(c) the date, time and place of such communication and/or instance;

(d) the mode of such communication (*e.g.*, by telephone, videoconference or face to face); and

(e) any witnesses to the communication and/or instance.

7. The terms "Plaintiff," "You," or "Your" refer to Plaintiff Dr. Aarti Patel as well as all persons acting in the interest of, or on her behalf in this action, including attorneys, investigators, consultants, etc.

8. The term "person" shall mean and include a natural person, individual, partnership, firm, corporation, or any kind of business or legal entity, its agents or employees.

9. The term "concerning" shall mean relating to, referring to, describing, explaining, evidencing, or constituting.

10. In lieu of identifying particular documents or communications, such documents or communications may, at Plaintiff's option, be attached to the answer to those interrogatories requesting identification of those documents or communications.

11. In construing these interrogatories: (i) the singular shall include the plural and the plural shall include the singular; (ii) the masculine, feminine or neuter pronouns, respectively, shall include the other genders; (iii) "and" as well as "or" shall be construed either disjunctively or conjunctively so as to bring within the scope of these interrogatories all information and documents that might otherwise be construed to be outside their scope; and (iv) the present tense of a verb shall include its past tense and vice versa.

**CLAIMS OF PRIVILEGE**

To the extent that Plaintiff believes that any of the interrogatories herein call for any information that is subject to a claimed privilege or immunity from disclosure, she should answer so much of each interrogatory and each part thereof that does not request, in Plaintiff's view,

allegedly privileged or immune information and set forth the basis for her claim of privilege or immunity with respect to the information that she refuses to give.

**INTERROGATORIES**

**INTERROGATORY NO. 20:**

State the (i) mobile phone number and (ii) mobile phone service carrier Plaintiff used to place the phone call depicted in the document Plaintiff produced as "PATEL 00000148."

**INTERROGATORY NO. 21:**

Identify all "recruiters" who Plaintiff claims "expressed extreme reluctance to move forward given the fact that [she has] an active lawsuit." *See* Plaintiff deposition testimony at 284:4-25.

Dated: April 15, 2026

By: */s/ Joseph M. Vento*
Joseph M. Vento
Seyfarth Shaw LLP
620 Eighth Avenue, 32nd Floor
New York, NY 10018
Tel: (212) 218-5500
Fax: (212) 218-5526
jvento@seyfarth.com

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I, Joseph M. Vento, hereby certify that on the below date I caused the foregoing Defendants' Second Set of Interrogatories to be served on counsel of record for Plaintiff in the above-captioned matter by email as follows:

James E. Burden, Esq.
McClure Burden LLC
25 Pompton Avenue, Suite 101
Verona, NJ 07044
james@mcclureburden.com

Martin Hyman, Esq.
Catherine Weiss Butto, Esq.
Spencer Fane
711 Third Avenue, Suite 1700
New York, NY 10017
mhyman@spencerfane.com
cbutto@spencerfane.com

*/s/ Joseph M. Vento*
Joseph M. Vento

Dated: April 15, 2026

# DEFENDANTS' EXHIBIT D

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| AARTI PATEL, M.D.,<br><br>Plaintiff,<br><br>-vs-<br><br>OPTUM MEDICAL CARE OF NEW JERSEY, P.C., and MAHESH TEKRIWAL, M.D.,<br>Defendants. | Civil Action No.: 3:24-cv-06133<br><br>**DEFENDANTS' FIRST REQUESTS FOR ADMISSION TO PLAINTIFF** |

Pursuant to Rules 26 and 36 of the Federal Rules of Civil Procedure and the Local Rules of this Court, Defendants Optum Medical Care of New Jersey, P.C. ("Optum"), and Mahesh Tekriwal, M.D. ("Dr. Tekriwal") (together, "Defendants"), by and through their attorneys, Seyfarth Shaw LLP, hereby serve the following First Requests for Admission (the "Requests") to Plaintiff Dr. Aarti Patel ("Plaintiff") and direct her to respond separately and fully in writing and under oath within thirty (30) days:

**INSTRUCTIONS**

1. Plaintiff is instructed that each of the matters she is requested to admit will be deemed to have been admitted unless, within thirty (30) days after service of this request, Plaintiff serves upon Defendants either: (1) a statement denying specifically the matters she is requested to admit or setting forth in detail the reasons why she cannot truthfully admit or deny those matters; or (2) written objections on the ground that some or all of the requested admissions are privileged or irrelevant or that the request is otherwise improper in whole or in part.

2. If written objections to a part of the Request are made, the remainder of the Request shall be answered within the period designated in the request. A denial shall fairly meet the substance of the requested admission. If good faith requires that Plaintiff deny only a part, or

requires qualification of a matter she is requested to admit, Plaintiff shall specify so much of it as is true and deny only the remainder.

3. Without being requested to do so by Defendants, Plaintiff must promptly amend any answer when it is discovered to have been incorrect when made, or it is discovered to be no longer true and circumstances are such that a failure to amend is in substance a knowing concealment. In addition, Plaintiff must promptly supplement any answer in the event that, prior to final disposition of this action, additional information comes to the attention of, or becomes available to Plaintiff, Plaintiff's attorneys, consultants, representatives, agents or any other person acting on behalf of Plaintiff.

## DEFINITIONS

1. The terms "and" and "or" shall be construed either conjunctively or disjunctively as necessary to bring within the scope of these requests the broadest response possible.

2. Singular and plural nouns shall be construed to bring within the scope of these requests the broadest response possible.

3. "Any," "each," "the," "every," and "all" shall be construed to bring within the scope of these requests the broadest response possible.

4. "Plaintiff" "you" or "your" as used herein refers to Plaintiff Dr. Aarti Patel and her attorneys, consultants, representatives, experts, investigators, agents and any other persons acting on her behalf.

**REQUESTS FOR ADMISSION**

**REQUEST NO. 1:**

Admit that you did not disclose the existence of the litigation captioned Joseph Jamie v. Garden State Heart Care, P.C., et al., Docket Number MID-L-003644-22 to anyone at Optum during your onboarding and hiring processes.

**REQUEST NO. 2:**

Admit that you did not disclose the existence of the litigation captioned Joseph Jamie v. Garden State Heart Care, P.C., et al., Docket Number MID-L-003644-22 to anyone at Optum between the time period January 1, 2023 and February 12, 2024.

**REQUEST NO. 3:**

Admit that you never sought any "written consent" from Optum to be released or excused from the restrictive covenants contained in Paragraph 12(b) of the "Agreement…Between Aarti Patel, M.D. and Optum Medical Care of New Jersey, P.C…", produced in this litigation as OPTUM 000054-000072.

Dated: April 15, 2026

By: */s/ Joseph M. Vento*
Joseph M. Vento
Seyfarth Shaw LLP
620 Eighth Avenue, 32nd Floor
New York, NY 10018
Tel: (212) 218-5500
Fax: (212) 218-5526
jvento@seyfarth.com

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I, Joseph M. Vento, hereby certify that on the below date I caused the foregoing Defendants' First Set of Requests for Admission to be served on counsel of record for Plaintiff in the above-captioned matter by email as follows:

James E. Burden, Esq.
McClure Burden LLC
25 Pompton Avenue, Suite 101
Verona, NJ 07044
james@mcclureburden.com

Martin Hyman, Esq.
Catherine Weiss Butto, Esq.
Spencer Fane
711 Third Avenue, Suite 1700
New York, NY 10017
mhyman@spencerfane.com
cbutto@spencerfane.com

*/s/ Joseph M. Vento*
Joseph M. Vento

Dated: April 15, 2026