**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| AARTI PATEL, M.D.,<br><br>Plaintiff,<br><br>v.<br><br>OPTUM MEDICAL CARE OF NEW JERSEY, P.C., and MAHESH TEKRIWAL, M.D.,<br><br>Defendants. | Civil Action No.: 3:24-cv-06133 |

# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL DNA TESTING OF PLAINTIFF

**On the Brief:**
Joseph M. Vento, Esq.

SEYFARTH SHAW LLP
620 Eighth Avenue
New York, NY 10018
(212) 218-5500
*Attorneys for Defendants*

# TABLE OF CONTENTS

**Page**


I. PRELIMINARY STATEMENT ....................................................... 1

II. FACTUAL AND PROCEDURAL BACKGROUND ...................................... 2

A. The Events of January 26, 2024 ................................................ 2

B. Plaintiff's Termination ............................................................ 4

C. Testing of the Fireball Bottles ................................................. 5

III. LEGAL STANDARD ....................................................................... 6

IV. ARGUMENT ................................................................................. 8

A. The DNA Test is Relevant ......................................................... 8

B. There is a Reasonable Possibility Testing Will Yield a Match .......... 13

C. Plaintiff's Rights Will be Minimally Impacted.................................. 14

D. Given the Importance of the Evidence and Minimal Impact on Plaintiff's Rights, Good Cause Exists ................................................ 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashby v. Mortimer*,
329 F.R.D. 650 (D. Idaho 2019) ....................7, 8, 15

*Branch v. Temple Univ.*,
No. 21-3099, 2023 WL 3993016 (3d Cir. June 14, 2023) ....................11

*Burk v. CRISIS24, Inc.*,
No. 2:24-CV-04698-MWF-MAR, 2025 WL 1723170 (C.D. Cal. May 7, 2025) ....................12

*D'Angelo v. Potter*,
224 F.R.D. 300 (D. Mass. 2004) ....................7, 14

*Davis v. City of New York*,
No. 13-cv-6260 (RML), 2019 WL 3252747 (E.D.N.Y. July 18, 2019) ....................7

*Kiniun v. Minnesota Life Ins. Co.*,
No. 10-cv-399 (MCR) (CJK), 2012 WL 12899102 (N.D. Fla. May 11, 2012) ....................7, 14

*McGrath v. Nassau Health Care Corp.*,
209 F.R.D. 55 (E.D.N.Y. 2002) ....................7, 14

*Oppenheimer Fund, Inc. v. Sanders*,
437 U.S. 340 (1978) ....................8

*Pacini v. Macy's*,
193 F.3d 766 (3d Cir. 1999) ....................8

*Schlagenhauf v. Holder*,
379 U.S. 104 (1964) ....................6

*Young v. United States*,
311 F.R.D. 117 (D.N.J. 2015) ....................7

**Other Authorities**

Federal Rule of Civil Procedure 35 ....................................................6, 7, 15

## I. PRELIMINARY STATEMENT

Defendants Optum Medical Care of New Jersey, P.C. ("Optum") and Mahesh Tekriwal, M.D. ("Dr. Tekriwal"), through their undersigned counsel, respectfully request that the Court order Plaintiff Aarti Patel, M.D. ("Plaintiff"), to submit to a DNA test.

On January 26, 2024, Plaintiff's coworkers accused her of exhibiting odd behavior, leaving the office premises in her car while patients were waiting, returning with a brown paper bag in hand, and smelling of alcohol. On the same day, two Fireball Cinnamon Whisky bottles (the "Fireball Bottles") were found in a trash can inside an employee-only office restroom. These reports prompted Optum to conduct an internal investigation. Plaintiff's employment was terminated shortly thereafter because of her dishonesty and interference with said investigation. Plaintiff has since alleged, among other things, the entire investigation was a pretextual sham to justify her unlawful termination.

As detailed below, a DNA test would reasonably determine if the Fireball Bottles belonged to Plaintiff. Plaintiff's contention that Optum's investigation was a complete sham puts her possession of the Fireball Bottles squarely at issue. The DNA test will be harmless, minimally invasive, and provide unique and persuasive evidence bearing on Plaintiff's possession of the Fireball Bottles. Accordingly, good cause exists to compel Plaintiff to submit to the DNA test.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff was employed by Optum as a cardiologist from August 2023 until her termination on February 12, 2024, working at Optum's office in Manahawkin, New Jersey. *See* Declaration of Joseph M. Vento ("Vento Decl.") Ex. A ("Compl.") ¶¶ 4, 16. On January 26, 2024, Plaintiff saw several patients in the Manahawkin office. *Id.* ¶ 53. Plaintiff's conduct on that day is central to this case.

### A. The Events of January 26, 2024

According to witness testimony and Optum documents, on January 26, 2024, Optum staff members, Meliss Mirandi and Megan Scott, reported to Optum's Office Manager for the Manahawkin office, Bernadette Perrini, that Plaintiff smelled like alcohol. Vento Decl. Ex. B at OPTUM 000103-104, 108-109; Vento Decl. Ex. C, Perrini Dep. 38:12-39:3, 40:5-10, 43:12-17. Several staff members, including Stephanie Shabunia, Olivia Nunn, Christa Gleason, and Ms. Mirandi, reported that Plaintiff left the premises and returned to the office sometime later. Vento Decl. Ex. B at OPTUM 000103-108. Ms. Mirandi reported that Plaintiff was carrying a brown paper bag when she returned to the office. *Id.* at OPTUM 000108. Ms. Nunn reported that she saw the brown paper bag on top of a floral clutch in the office "reading room" and noted that Plaintiff had told her that she was "running to Quick Stop." *Id.* at OPTUM 000106. Plaintiff testified that she did bring a floral clutch and brown paper bag into the office that day, although she testified that the bag

contained snacks. Vento Decl. Ex. D, Pl. Dep. 245:1-249:1, 250:19-252:2. Ms. Gleaason also reported that Plaintiff told people she was "going to Quick Check" and "would be right back." Vento Decl. Ex. B at OPTUM 000107.

Between approximately 2:00 p.m. and 2:45 p.m., after speaking with Ms. Mirandi and Ms. Scott about their concerns that Plaintiff smelled like alcohol, Ms. Perrini found the Fireball Bottles in the trash can of an employee bathroom. Perrini Dep. 43:7-44:18. The employee bathroom had a sign that said "Staff only," and members of the public were not allowed to use it. *Id.* After finding the Fireball Bottles, Ms. Perrini retrieved them from the trash can using surgical gloves and paper towels and photographed them. Perrini Dep. 49:13-50:4. Ms. Perrini then wrapped the bottles in paper towels and placed them in her office drawer. That same day, Ms. Perrini took the Fireball Bottles to her home and placed them in a Ziploc bag. Perrini Dep. 50:5-12.

Plaintiff denied that she threw the Fireball Bottles in the trashcan or used alcohol on January 26, 2024, although she admitted she had previously been accused of smelling of alcohol while at work. Pl. Dep. 250:19-252:2, 252:17-25, 261:22-262:5. Plaintiff admitted that she drank Fireball Whisky before, but denied that the Fireball Bottles found in the restroom were hers or that she drank any that day. Pl. Dep. 251:15-252:2. Plaintiff contends that Defendants knowingly fabricated the allegations concerning the Fireball Bottles and her alleged alcohol use on January

26, 2024 for a discriminatory and retaliatory purpose: namely, to manufacture a pretextual reason for her termination. *See* Compl. ¶¶ 55, 57, 72, 95, 118, 125, 129.

B. <u>Plaintiff's Termination</u>

The evidentiary record shows that following Ms. Perrini's report of the events of January 26, 2024, Optum placed Plaintiff on administrative leave while it investigated allegations that she left the office during the workday, consumed alcohol during work hours, and discarded the Fireball Bottles in the employee-only restroom. Ms. Perrini's report included an eyewitness statements that Plaintiff left the premises and smelled of alcohol, her discovery of the Fireball Bottles, and the photographs she shared with her supervisor, Anita Mitra (Vento Decl. Ex. B at OPTUM 000110-111). Optum's Chief Medical Officer, Gaurang Brahmbhatt, M.D., in consultation with Human Resources, placed Plaintiff on administrative leave while Optum investigated allegations that Plaintiff left the office in the middle of the day, consumed alcohol during work hours, and discarded the Fireball Bottles that she consumed in the employee-only restroom. *See*, *e.g.*, Vento Decl. Ex. E, Brahmbhatt Dep. 30:1-31:10, 31:15-19.

On January 29, 2024, Dr. Brahmbhatt and Human Resources Senior Director Tracy Peterson informed Plaintiff that Optum was conducting a confidential investigation concerning Plaintiff's conduct on January 26, 2024. *Id.* After speaking with Dr. Brahmbhatt and Ms. Peterson, Plaintiff went to the office and questioned

office staff about the allegations against her. Brahmbhatt Dep. 30:1-31:10, 31:15-19; Peterson Dep. 88:24-89:24, 105:25-106:21; Pl. Dep. 264:1-25; Perrini Dep. 107:11-108:14. She later falsely told Dr. Brahmbhatt and Ms. Peterson that she had gone to the office to provide patient care. Peterson Dep. 88:24-89:24, 105:25-106:21.

On or about February 12, 2024, Dr. Brahmbhatt, in consultation with Human Resources, decided to terminate Plaintiff's employment because she confronted office staff about the allegations raised against her after being informed of Optum's investigation and was dishonest when questioned about it. Brahmbhatt Dep. 32:20-33:18; Peterson Dep. 105:25-106:21.

Plaintiff, for her part, denies that she consumed alcohol or left the office on January 26, 2024, though she admits that she questioned Ms. Perrini and Ms. Snyder about the allegations levied against her. Pl. Dep. 250:19-252:2, 252:17-25, 261:22-262:5, 264:1-25. Notably, Plaintiff contents the allegations related to the Fireball Bottles and her being intoxicated at work were fabricated to create a pretext for her termination. *See* Compl. ¶¶ 55, 57, 72, 95, 118, 125, 129.

C. Testing of the Fireball Bottles

On or about January 15, 2026, Ms. Perrini shipped the Fireball Bottles in a packaged Ziploc bag to an accredited forensic laboratory, Guardian Forensic Sciences (the "Lab"), for testing. Vento Decl. ¶¶ 10-11. The Lab found two partial DNA profiles from a fingerprint located on one of the Fireball Bottles and

determined that the profiles were attributable to two different female contributors. *Id.* ¶¶ 12-14; *see also* Vento Decl., Ex. G. The Lab further determined that all female Lab workers can be statistically excluded as potential matches. *Id.* ¶ 15, Vento Decl. Ex. G at p. 6.

Ms. Perrini submitted her own DNA sample to the Lab for testing, and the Lab further determined that Ms. Perrini's DNA was inconsistent with the DNA profiles found on the Fireball Bottles. *Id.* ¶ 17; Vento Decl. Ex. G at p. 6. If provided with a reference DNA sample from Plaintiff, the Lab will be able to generate a DNA profile of Plaintiff, compare that profile to the DNA found on the Fireball Bottles, and include or exclude Plaintiff as a possible contributor to the DNA found on the Fireball Bottles, up to a high degree of statistical probability. Vento Decl. Ex. G at p. 2.

Defendants repeatedly requested that Plaintiff submit a buccal swab (a painless cheek swab) for DNA testing, and Plaintiff refused. Vento Decl. Ex. F.

## III. LEGAL STANDARD

Under Federal Rule of Civil Procedure 35(a), a party seeking an order compelling another party to submit to a physical examination must show that: (1) a physical condition of the party is genuinely "in controversy;" and (2) good cause exists for ordering the examination. Fed. R. Civ. P 35(a); *see also Schlagenhauf v. Holder*, 379 U.S. 104, 118-120 (1964). While it appears that the Third Circuit has

not addressed the issue, this Court and district courts outside the circuit have applied Rule 35(a) to motions to compel a party to submit a DNA sample for testing. *Young v. United States,* 311 F.R.D. 117, 120 (D.N.J. 2015) (citing *Schlagenhauf*); *D'Angelo v. Potter*, 224 F.R.D. 300, 302-303 (D. Mass. 2004) (citing *McGrath v. Nassau Health Care Corp.*, 209 F.R.D. 55 (E.D.N.Y. 2002)).

"In order to compel a DNA sample under the *McGrath* test, the movant bears the burden of establishing that: (1) the DNA evidence is relevant; (2) there is a reasonable possibility that testing will yield a match; and (3) the privacy rights of the individual being tested will not be unduly affected." *Davis v. City of New York*, No. 13-cv-6260 (RML), 2019 WL 3252747, at *2 (E.D.N.Y. July 18, 2019); *see also Kiniun v. Minnesota Life Ins. Co.*, No. 10-cv-399 (MCR) (CJK), 2012 WL 12899102, at *2 (N.D. Fla. May 11, 2012) (stating standards imposed by *McGrath* and *D'Angelo*). Courts have found "good cause" exists to compel DNA testing where the DNA testing provided relevant evidence not available through other means, and where the evidence "goes directly to the question of liability," and is not "sought solely for purposes of impeachment" or establishing the extent of damages. *D'Angelo*, 224 F.R.D. at 304. Whether to grant a motion to compel DNA testing is committed to the discretion of the court. *See Ashby v. Mortimer*, 329 F.R.D. 650, 653 (D. Idaho 2019). "Like other rules of discovery, Rule 35 should be construed liberally in favor of examination, but the Court must balance the right of the party to

be examined to avoid personal invasion against the moving party's right to a fair trial." *Id.* at 653-54 (internal quotation and citation omitted).

## IV. ARGUMENT

The Court should order Plaintiff to submit a buccal swab for DNA testing, as such evidence is directly relevant to a factual dispute central to both Plaintiff's and Defendants' theories of the case, and Defendants' need for the evidence outweighs the minimal invasion on Plaintiff's rights.

### A. The DNA Test is Relevant

Relevance in discovery "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). It is "well recognized that the federal rules allow broad and liberal discovery." *Pacini v. Macy's*, 193 F.3d 766, 777-78 (3d Cir. 1999).

Whether Plaintiff consumed alcohol while working on January 26, 2024, and whether the Fireball Bottles belonged to Plaintiff, are central to each party's theory of the case. In her Complaint, Plaintiff claims that she did not drink alcohol on that day and was not in possession of any alcohol bottles, and that these allegations were fabricated by Defendants in an effort to manufacture a pretextual reason for her termination. Compl. ¶¶ 55, 57, 72, 95, 118, 125, 129. Thus, whether Plaintiff brought the Fireball Bottles to work and disposed of them in the trash can in the

Optum employee bathroom on January 26, 2024, is directly relevant to Plaintiff's theory of the case.

Defendants' position, in contrast, is that multiple staff members reported that, on January 26, 2024, Plaintiff left and then returned to the office in possession of a brown paper bag and that she smelled of alcohol, after which Ms. Perrini found the Fireball Bottles in the employee restroom trash can. Based on these staff reports and Perrini's discovery of the Fireball Bottles, Optum informed Plaintiff she would be subject to a confidential investigation concerning her conduct on January 26, 2024. After learning of the investigation, Plaintiff went to the office to question staff about the allegations against her and then lied to Optum administrators about her conduct. Optum terminated Plaintiff's employment because of her conduct after learning of the investigation. If Plaintiff's DNA is found on the Fireball Bottles, this supports Defendants' position that they decided to investigate Plaintiff because of legitimate staff complaints and the contemporaneous discovery of the Fireball Bottles, rather than for a manufactured, pretextual purpose. The factfinder in this case will certainly be tasked with determining whether Optum's decision to conduct an investigation into Plaintiff's conduct on January 26, 2024, was warranted. Along with the eyewitness complaints about Plaintiff acting strangely and possibly being intoxicated at work, the Fireball Bottles recovered from the employee-restroom trash can triggered the investigation. The DNA test confirming that Plaintiff touched the

Fireball Bottles would tend to prove that Plaintiff drank from the Fireball Bottles and/or lied about bringing the bottles to the office. Indeed, as further detailed in the accompanying Declaration of Arthur W. Young of Guardian Forensic Sciences, if Plaintiff is compelled to provide a DNA sample, the lab could determine whether she is part of the 99+% of the population that does not share the same DNA profile as those located on the bottles. *See* Declaration of Arthur W. Young ("Young Decl."), ¶ 5. Put in the affirmative, the lab could determine that Plaintiff is a member of the <1% of the population that does share the DNA profile located on the bottles. *Id.* Accordingly, the DNA test would be highly relevant to Defendants' primary defense that the investigation was initiated for legitimate purposes and that her termination that flowed from the investigation was lawful.

Plaintiff may argue that because she was terminated for lying during the investigation (specifically about confronting witnesses)—not for drinking itself—the truth of the drinking allegation is a red herring. But that argument overstates the law and understates what is genuinely in dispute.

First, the investigation existed only because of the drinking allegations. Whether Plaintiff was in fact drinking is relevant to her contention that the allegations were fabricated and that the investigation was a sham. Evidence linking Plaintiff genetically to the Fireball Bottles would bear directly on that contention

and would provide additional context regarding the legitimacy of the investigation that ultimately resulted in Plaintiff's termination.

Second, because Plaintiff claims the drinking accusation was fabricated, baseless, or a pretextual, evidence associating her with the Fireball Bottles would undermine that narrative by further demonstrating that the underlying complaint had a factual basis. Indeed, such evidence would support Defendants' position that the investigation was initiated in good faith based on legitimate concerns rather than manufactured allegations.

Third, even under an "honest belief" standard, the reasonableness of Optum's actions is at issue. Evidence associating Plaintiff with the Fireball Bottles would support Defendants' position that the investigation was based on legitimate workplace concerns rather than fabricated allegations and would further support the reasonableness of Optum's decision to investigate Plaintiff's conduct.

Not only is the presence of Plaintiff's DNA on the Fireball Bottles relevant to each party's central theory of the case, it is also relevant to numerous other issues that will bear directly on liability and damages, including Plaintiff's credibility, Plaintiff's claim to emotional distress damages, and Defendants' after-acquired evidence defense. *See*, *e.g.*, *Branch v. Temple Univ.*, No. 21-3099, 2023 WL 3993016, at *1-4 (3d Cir. June 14, 2023) (holding district court did not err by allowing employer to introduce evidence of employee misconduct discovered after

termination for impeachment and after-acquired evidence defense); *Burk v. CRISIS24, Inc.*, No. 2:24-CV-04698-MWF-MAR, 2025 WL 1723170, at *7-8 (C.D. Cal. May 7, 2025) (holding defendants could pursue discovery of employment records related to plaintiff's "smelling of alcohol on the job" as such evidence was relevant to plaintiff's emotional distress damages and defendants' after-acquired evidence defense). Plaintiff testified that she did not consume alcohol on the job and the Fireball Bottles were not hers, whereas multiple staff members observed that she smelled of alcohol and that she brought a brown paper bag into the workplace. Further, Optum's Code of Conduct prohibits drinking alcohol at work. Vento Decl., Ex. H. In addition, Plaintiff could have been terminated for cause pursuant to her Employment Agreement if she "either provide[d], or attempt[ed] to provide, Services while under the influence of alcohol, drugs, or other mood altering substances[.]" Vento Decl. Ex. I at ¶ 10(b)(x).

Finally, the presence of Plaintiff's DNA on the Fireball Bottles would also go directly to Plaintiff's credibility, as she testified that she was not in possession of the Fireball Bottles or any alcohol on January 26, 2024. Since Plaintiff's testimony is central to her case, impeachment evidence is plainly relevant and material to this action.

B. <u>There is a Reasonable Possibility Testing Will Yield a Match</u>

The record evidence supports a finding that there is a reasonable possibility that Plaintiff's DNA will match one of the two female DNA profiles found on the Fireball Bottles. Multiple Optum staff members reported that Plaintiff smelled of alcohol and that she returned to the office carrying a brown paper bag after she said she was going to a store. One staff member saw the brown paper bag next to a floral clutch bag in the records room, and Plaintiff confirmed at her deposition that the floral clutch bag and brown paper bag were hers. Furthermore, the Fireball Bottles were found in an employee-only bathroom that had a "STAFF ONLY" sign on the door, making it reasonably likely that a female Optum employee brought the Fireball Bottles into the bathroom and put them in the trash can. Given the multiple sources of evidence linking Plaintiff to the Fireball Bottles, there is a reasonable possibility that her DNA will be found on the Fireball Bottles.

Additionally, if Plaintiff is compelled to provide a DNA sample, the lab could determine whether she is part of the 99+% of the population that does not share the same DNA profile as those located on the bottles. Young Decl., ¶ 5. Put in the affirmative, the lab could determine that Plaintiff is a member of the <1% of the population that does share the DNA profile located on the bottles. *Id.*

C. Plaintiff's Rights Will be Minimally Impacted

Courts have repeatedly observed that a buccal swab is a painless and quick procedure that effects "only a minimal intrusion on the party's privacy rights." *McGrath*, 209 F.R.D. at 61; *see also Kiniun v. Minnesota Life Ins. Co.*, No. 10-cv-399 (MCR) (CJK), 2012 WL 12899102, at *2 n. 8 (N.D. Fla. May 11, 2012) (observing that a cheek swab DNA test was not unduly intrusive on plaintiff's rights as it "could be obtained in approximately five minutes" and that plaintiff brought the lawsuit which put the DNA testing at issue). Furthermore, Defendants seek Plaintiff's DNA sample for the limited purpose of comparing it to the DNA profiles found on the Fireball Bottles, and the Court may impose "'appropriate protections that limit the use of the DNA information'" in order to address any privacy concerns Plaintiff may have. *D'Angelo*, 224 F.R.D. at 303 (quoting *McGrath*, 209 F.R.D. at 61).

D. Given the Importance of the Evidence and Minimal Impact on Plaintiff's Rights, Good Cause Exists

As detailed above, determining whether Plaintiff's DNA matches either of the female DNA profiles found on the Fireball Bottles will provide important and unique evidence bearing on Plaintiff's theory of liability and Defendants' defense, in addition to Plaintiff's credibility and her claims for economic and emotional distress damages. Moreover, Plaintiff's rights will be minimally impacted; the test involves a quick, painless buccal swab, and the information gathered from the test will be

used only for the limited purpose of determining whether Plaintiff's DNA matches either of the two female DNA profiles found on the Fireball Bottles. Construing Rule 35 liberally, the Court should determine that good cause exists to order Plaintiff to submit to the DNA test. *Ashby*, 329 F.R.D. at 653-54.

Dated: October 9, 2026

Respectfully submitted,

SEYFARTH SHAW LLP

By: */s/ Joseph M. Vento*
Joseph M. Vento

*Attorneys for Defendants*