# EXHIBIT F

**From:** Vento, Joseph
**Sent:** Wednesday, August 26, 2026 2:56 PM
**To:** james@mcclureburden.com; 'Hyman, Martin'; 'Weiss Butto, Catherine'
**Cc:** Smith, Cameron
**Subject:** RE: Patel - Fireball bottles
**Attachments:** OPTUM_000435-000442.pdf

Jim – we understand your client's position and will proceed accordingly. As you can see below in my first email on this subject, you were invited to be part of this process ("Accordingly, we wanted to invite your input and involvement in this process from the start" highlighted below). Yet, you refused and never once asked for an update on the lab's testing efforts. It's rather disingenuous of you to protest that you were purposefully excluded from the process now.

Also, your email misconstrues what we represented to the Court in the April 24 letter. The first thing the lab did when it received the bottles was test for the presence of saliva (as I explained below). If saliva was present, the lab would have used that saliva to extra a DNA profile(s). However, the lab could not locate the presence of saliva. We then asked the lab if it could determine whether there were usable fingerprints on the bottles for fingerprint testing/comparison. To my understanding, the lab located a partial fingerprint of sorts – one that cannot be used for comparison to another fingerprint sample, but from that fingerprint, the lab detected two DNA profiles. I will provide this update to the Court in our upcoming joint status letter and I am attaching all e-mail correspondence I've had with the lab since the production I made of our correspondence on January 23, 2026.

On the subject of our joint status letter, aside from the foregoing update on the lab's testing efforts, I don't believe there is anything else to update the Court on that is different than our April 24 letter. Do you think it makes sense to submit a letter with this sole update that references the April 24 letter? If so, I can circulate a draft for your input.

Joe

---

**From:** james@mcclureburden.com <james@mcclureburden.com>
**Sent:** Monday, August 24, 2026 1:31 PM
**To:** Vento, Joseph <jvento@seyfarth.com>; 'Hyman, Martin' <mhyman@spencerfane.com>; 'Weiss Butto, Catherine' <cbutto@spencerfane.com>; james@mcclureburden.com
**Cc:** Smith, Cameron <CASmith@seyfarth.com>
**Subject:** RE: Patel - Fireball bottles

**External Email – Do Not Click Links or Attachments Unless You Know They Are Safe**

Joe – my summer has been fine and I hope yours has been as well.

We understand your position with respect to the Fireball bottles and DNA testing and our position has not changed. We continue to object to the belated DNA testing and to a "process" (if one could call it that) from which we have been entirely excluded. I will note that in the April 24, 2026 letter to the Court at page 10, Defendant then indicated that the

DNA testing was "unsuccessful," a position which is contradicted by your August 21, 2026 email and raises even more questions about the propriety of the handling and "testing" of those bottles.

We also note that even in your August 21, 2026 email, you admit (as you must based upon the testimony of your clients), that any drinking on the job allegation, which Optum was fully aware of when it fired Dr. Patel, was not one of reasons for her termination. Thus, the proposed DNA testing is irrelevant, vexatious and constitutes yet another act of retaliation against Dr. Patel.

We reserve our rights to oppose Optum's application for DNA testing when and if it is presented to the Court.

James E. Burden, Esq.
McClure Burden LLC
25 Pompton Avenue, Suite 101
Verona, NJ 07044
(862) 323-0422
james@mcclureburden.com

---

**From:** Vento, Joseph <jvento@seyfarth.com>
**Sent:** Friday, August 21, 2026 1:50 PM
**To:** james@mcclureburden.com; 'Hyman, Martin' <mhyman@spencerfane.com>; 'Weiss Butto, Catherine' <cbutto@spencerfane.com>
**Cc:** Smith, Cameron <CASmith@seyfarth.com>
**Subject:** RE: Patel - Fireball bottles

Hi Jim – I hope you are enjoying your summer. I am reaching out again concerning the subject of the Fireball bottles. As you know, the lab has had the bottles since January 2026. After further examination and testing, the lab located a fingerprint on I believe one of the bottles. While the fingerprint is not clear enough for a fingerprint analysis/comparison, the lab did locate two partial DNA profiles from that print. Further, the lab has determined that those profiles both belong to two different females. Consistent with what I understand is its customary practice, the lab has excluded all female lab workers as a match.

We have asked Bernadette Perrini and she has agreed to submit her DNA sample (via buccal swab) to the lab for analysis. However, even if the lab determines she is a probable match, that leaves one female DNA profile.

Accordingly, we reiterate our request for Dr. Patel to provide a DNA sample. Doing so would be minimally intrusive. The lab can mail a buccal swab kit directly to her house (or your office) and Dr. Patel can swab the inside of her cheek and send it back to the lab (following the provided instructions). While you are correct that Dr. Patel was not terminated for actually consuming alcohol at work, Optum's good faith suspicions that those Fireball bottles located in the office trash belonged to Dr. Patel was unquestionably the kickoff to the investigation that ultimately led to Dr. Patel's termination. Additionally, Dr. Patel has denied that the bottles were hers. This places the bottles' ownership directly at issue.

**Please confirm Plaintiff's position on this issue as soon as possible**. If Dr. Patel refuses, Optum will have no choice but to seek the appropriate relief from the Court.

Lastly, the lab hasn't provided any written report yet that details its testing efforts but I understand it intends to do so once all testing is complete. Of course, we will share a copy of whatever we receive in that regard.

Joe

**Joseph Vento** | Partner | Seyfarth Shaw LLP
620 Eighth Avenue | New York, New York 10018-1405

Direct: +1-212-218-5548
jvento@seyfarth.com | www.seyfarth.com

CONFIDENTIALITY WARNING: This email may contain privileged or confidential information and is for the sole use of the intended recipient(s). Any unauthorized use or disclosure of this communication is prohibited. If you believe that you have received this email in error, please notify the sender immediately and delete it from your system.

---

**From:** Vento, Joseph
**Sent:** Wednesday, January 14, 2026 11:01 AM
**To:** 'james@mcclureburden.com' <james@mcclureburden.com>; 'Martin Hyman' <mhyman@golenbock.com>; 'Catherine Weiss' <cweiss@golenbock.com>; De Baun, Nicholas <NDeBaun@seyfarth.com>; Weissman, Margarita A. <mweissman@seyfarth.com>
**Subject:** RE: Patel - Fireball bottles

Jim – regardless of what happened before the parties' failed mediation, the bottles remained in the Ziploc bag Ms. Perrini placed them in after collection and Plaintiff, as far as I know, never raised the issue thereafter.

So, I raised the issue again and invited your participation in the process. I took your initial respond below that Plaintiff wants no involvement in the testing of these bottles (we could have discussed the lab chosen, process for collection, and shipping, visit to the lab to be present during testing, etc.). Let me know if I am mistaken asap because my understanding is that the bottles have now been securely packaged and Ms. Perrini is taking the package to UPS today around 2pm to be shipped to the lab. I am also around to discuss.

I will respond to your flurry of falsehoods separately.

Joe

---

**From:** james@mcclureburden.com <james@mcclureburden.com>
**Sent:** Wednesday, January 14, 2026 10:10 AM
**To:** Vento, Joseph <jvento@seyfarth.com>; 'Martin Hyman' <mhyman@golenbock.com>; 'Catherine Weiss' <cweiss@golenbock.com>; De Baun, Nicholas <NDeBaun@seyfarth.com>; Weissman, Margarita A. <mweissman@seyfarth.com>; james@mcclureburden.com
**Subject:** RE: Patel - Fireball bottles

Joe,

You can't rewrite the record . . . or your clients' sworn testimony.

The drinking on the job story was a fabrication, designed to implement (with Bernadette Perrini's assistance) Dr. Tekriwal's scheme to terminate Dr. Patel after she complained about discrimination and the hostile work environment he created. Optum did nothing to investigate those allegations and made no findings because the allegations were demonstrably false. It did not report any such alleged violation to the medical authorities (indeed, Perrini did not even report the allegation to her supervisors for six hours during which time Dr. Patel was permitted to continue treating patients). Optum broke the chain of custody on the bottles that Perrini supposedly fished out of a trash receptacle two

years ago. It declined to state (and thus tacitly disclaimed), in response to our formal discovery requests going back to September 6, 2024, that Dr. Patel was terminated for drinking alcohol on the job. It ignored our repeated requests (going back to September and October 2024 and extending into January 2025) to secure and fingerprint the bottles using the services of an independent forensic firm, and elected instead to allow those bottles to be retained by Perrini, who collaborated with Tekriwal (and was thanked profusely by him) for helping him get rid of Dr. Patel. Instead of immediately turning over those bottles to counsel in connection with an impending lawsuit, Perrini took them home (and wherever else she transported them) and Tekriwal suggested that Perrini lie about Dr. Patel's fingerprints and DNA having been found on the bottles in yet another shameless attempt to intimidate her into abandoning her claims.

In October 2025, Dr. Brahmbhatt finally admitted under oath that Dr. Patel was not terminated for drinking alcohol on the job and that no investigation was ever conducted, let alone concluded, thus confirming that the allegation was a sham and a pretext for her wrongful termination.

Your revisionist "after-acquired" evidence theory has no merit. That defense applies only to matters that the employer did not know about at the time of termination. In McKennon v. Nashville Banner Pub. Co., 513 U.S. 352 (1995), the United States Supreme Court made this clear:

> Where an employer seeks to rely upon after-acquired evidence of wrongdoing, it must first establish that the wrongdoing was of such severity that the employee in fact would have been terminated on those grounds alone **if the employer had known of it at the time of the discharge**. The concern that employers might as a routine matter undertake extensive discovery into an employee's background or performance on the job to resist claims under the Act is not an insubstantial one, but we think the authority of the courts to award attorney's fees, mandated under the statute, 29 U.S.C. §§ 216(b), 626(b), and to invoke the appropriate provisions of the Federal Rules of Civil Procedure will deter most abuses. Id. At 362-63 (emphasis added).

Our case presents the polar opposite of the after-acquired evidence doctrine. It is undisputed that Dr. Brahmbhatt, the decision-maker: knew all about the allegations of Dr. Patel's alleged alcohol use at work; did nothing to investigate those serious (and scurrilous) allegations; did not take any steps to secure or test the bottles before firing Dr. Patel; testified that the allegations of alleged alcohol abuse at work were **not** the reason that Dr. Patel was fired; and relied instead on a different pretext for firing Dr. Patel and severely damaging her life and career. Under these circumstances, Optum cannot possibly invoke the after-acquired evidence doctrine and its belated and somewhat desperate attempt to shoe-horn this into an (unpled) after-acquired evidence defense is without merit.

With regard to the last paragraph in your email, please be advised that any further unilateral mishandling of the bottles by Optum will constitute tampering that will be brought to the attention of the court should you pursue your "after-acquired evidence" theory or otherwise seek to resurrect the disclaimed "drinking on the job" ruse. Proceed with caution.

James E. Burden, Esq.
McClure Burden LLC
25 Pompton Avenue, Suite 101
Verona, NJ 07044
(862) 323-0422
james@mcclureburden.com

---

**From:** Vento, Joseph <jvento@seyfarth.com>
**Sent:** Monday, January 12, 2026 7:20 PM
**To:** james@mcclureburden.com; Martin Hyman <mhyman@golenbock.com>; Catherine Weiss <cweiss@golenbock.com>; De Baun, Nicholas <NDeBaun@seyfarth.com>; Weissman, Margarita A. <mweissman@seyfarth.com>
**Subject:** Re: Patel - Fireball bottles

Jim – we disagree with your assertions below. This evidence is relevant and discoverable for several reasons.

First, you have made it rather clear – as recently as before the Magistrate on December 5 – that Plaintiff believes the entire investigation into her suspected drinking was a witch hunt as a means to have her terminated. During that conference you made several representations that Dr. Tekriwal was determined to find a reason to terminate Dr. Patel and insinuated he worked with Bernadette Perini to fabricate grounds to do so. While that theory is farfetched to say the least, this obviously places the whiskey bottles located in the trash at issue.

Further, if Dr. Patel's DNA is on the whiskey bottles, it would become impeachment evidence since Dr. Patel denies the bottles were hers.

Finally, this goes to Defendants' after-acquired evidence defense (see Defendants' 10th Affirmative Defense). In other words, if Defendants establish that Dr. Patel was indeed drinking while on duty, Defendants would be entitled to argue that they would have fired Dr. Patel for that offense and any back pay would therefore be limited to the date the wrongdoing was discovered. *See Mardell v. Harvleysville Life Ins. Co.*, 65 F.3d 1072, 1073-74 (3d Circ. 1995).

That said, we are going to proceed as outlined below. If there is saliva on the bottles, we will let you know and attempt to meet and confer again before having to bring the appropriate motion to the Court.

Joe

**Joseph Vento** | Associate | Seyfarth Shaw LLP
620 Eighth Avenue | New York, New York 10018-1405
Direct: +1-212-218-5548
jvento@seyfarth.com | www.seyfarth.com

Seyfarth

CONFIDENTIALITY WARNING: This email may contain privileged or confidential information and is for the sole use of the intended recipient(s). Any unauthorized use or disclosure of this communication is prohibited. If you believe that you have received this email in error, please notify the sender immediately and delete it from your system.

On Jan 7, 2026, at 3:38 PM, james@mcclureburden.com wrote:

Joe,

We do not consent to having the Fireball bottles tested for DNA and our client providing a DNA sample. As you will recall, Dr. Brahmbhatt, the decision-maker, testified that Dr. Patel was not fired for drinking alcohol on the job. Instead, Dr. Brahmbhatt testified that Dr. Patel was fired because she came back to the office after having been told that she was suspended and that she allegedly interfered with the putative "investigation" into her drinking on the job. See Brahmbhatt at 32:20-33:12. As we now know, Optum conducted no investigation and did not determine that Dr. Patel drank alcohol on the job. They fired her nonetheless.

Because Dr. Patel was not terminated for drinking on the job, the results of any DNA test are not relevant and we reject Optum's belated attempt to fabricate a reason for Dr. Patel's unlawful termination.

Finally, we are available for either of the April dates for the settlement conference with the Court. Please let us know which date works for you so we can get back to the Court promptly.

James E. Burden, Esq.
McClure Burden LLC
25 Pompton Avenue, Suite 101
Verona, NJ 07044
(862) 323-0422
james@mcclureburden.com

---

**From:** Vento, Joseph <jvento@seyfarth.com>
**Sent:** Monday, January 5, 2026 4:32 PM
**To:** James Burden <james@mcclureburden.com>
**Cc:** 'Martin Hyman' <mhyman@golenbock.com>; 'Catherine Weiss' <cweiss@golenbock.com>; De Baun, Nicholas <NDeBaun@seyfarth.com>
**Subject:** Patel - Fireball bottles

Jim – I understand when this case started there was some initial discussion about having the Fireball bottles tested for DNA. We write to reraise that idea.

As you may know, the bottles were collected by Ms. Perrini and have been stored at her home in a Ziploc bag since that time. We located a lab called Guardian Forensic Sciences Guardian Forensic Sciences - Home [guardian-forensics.org] located in Pennsylvania that can test the bottles. The lab recommends first testing the bottles for the presence of saliva, which would dictate whether a DNA test can even be run. If there is saliva present, the lab can run a DNA test and in that instance the lab would need to collect a saliva sample from Dr. Patel to compare. If there is no saliva present, no DNA test can be performed.

Importantly, we understand it's possible the lab's swabbing the bottles for saliva may impact the sample such that it cannot be retested by a second lab. The lab would try to only swab 50% of the bottles and let us know if more swabbing is needed to collect enough of a sample to be tested. The lab won't really know until they see the bottles. Accordingly, we wanted to invite your input and involvement in this process from the start.

Please let us know if you have any issue with us having the bottles tested for the presence of saliva and, if present, for DNA. The turnaround time is 2-3 weeks so we would like to have the bottles sent to the lab within the next few weeks.

We are happy to arrange a call to discuss if you'd like.

Joe

**Joseph Vento** | Associate | Seyfarth Shaw LLP
620 Eighth Avenue | New York, New York 10018-1405
Direct: +1-212-218-5548
jvento@seyfarth.com | www.seyfarth.com

Seyfarth

CONFIDENTIALITY WARNING: This email may contain privileged or confidential information and is for the sole use of the intended recipient(s). Any unauthorized use or disclosure of this communication is prohibited. If you believe that you have received this email in error, please notify the sender immediately and delete it from your system.

**Vento, Joseph**

| | |
|---|---|
| **From:** | Arthur Young <cyberspider.awy@gmail.com> |
| **Sent:** | Tuesday, August 25, 2026 9:46 AM |
| **To:** | Vento, Joseph |
| **Subject:** | Re: Fireball Whiskey Bottles |

**External Email – Do Not Click Links or Attachments Unless You Know They Are Safe**

Update: The reference DNA sample arrived yesterday.

On Tue, Jul 14, 2026 at 8:27 AM Arthur Young <cyberspider.awy@gmail.com> wrote:

I hope that it will be this week. In the meantime, we can work on getting the reference?

On Tue, Jul 14, 2026 at 8:23 AM Vento, Joseph <jvento@seyfarth.com> wrote:

Thank you for the update, Arthur. When do you expect to complete the final check and retest?

**Joseph Vento** | Partner | Seyfarth Shaw LLP
620 Eighth Avenue | New York, New York 10018-1405
Direct: +1-212-218-5548
jvento@seyfarth.com | www.seyfarth.com

Seyfarth

CONFIDENTIALITY WARNING: This email may contain privileged or confidential information and is for the sole use of the intended recipient(s). Any unauthorized use or disclosure of this communication is prohibited. If you believe that you have received this email in error, please notify the sender immediately and delete it from your system.

**From:** Arthur Young <cyberspider.awy@gmail.com>
**Sent:** Friday, July 10, 2026 8:20 AM
**To:** Vento, Joseph <jvento@seyfarth.com>
**Subject:** Re: Fireball Whiskey Bottles

Update: Partial DNA profile obtained, looks like it might be a mixture. Major contributor is a female. Don't get too excited just yet, I need to check against the staff. The laser was replaced last

week, hence the delay, but a weak laser might explain why a weak sample looked like nothing. Will be pulling that up again to retest.

On Wed, Jun 10, 2026 at 9:44 AM Arthur Young <cyberspider.awy@gmail.com> wrote:




On Mon, Apr 6, 2026 at 9:33 AM Arthur Young <cyberspider.awy@gmail.com> wrote:

Joe - Can you call me when you get the chance?

On Mon, Mar 9, 2026 at 10:05 AM Vento, Joseph <jvento@seyfarth.com> wrote:

Hi Arthur – thanks for the call this morning. Even though there is no detection of saliva, please go ahead and test the bottles together (one sample) for DNA. If you have any questions, just give me a call.

Joe

**Joseph Vento** | Partner | Seyfarth Shaw LLP
620 Eighth Avenue | New York, New York 10018-1405
Direct: +1-212-218-5548
jvento@seyfarth.com | www.seyfarth.com

Seyfarth

CONFIDENTIALITY WARNING: This email may contain privileged or confidential information and is for the sole use of the intended recipient(s). Any unauthorized use or disclosure of this communication is prohibited. If you believe that you have received this email in error, please notify the sender immediately and delete it from your system.

---

**From:** Arthur Young <cyberspider.awy@gmail.com>
**Sent:** Friday, March 6, 2026 3:51 PM
**To:** Vento, Joseph <jvento@seyfarth.com>
**Cc:** ayoung@guardian-forensics.org; De Baun, Nicholas <NDeBaun@seyfarth.com>
**Subject:** Re: Fireball Whiskey Bottles

Update: Testing for saliva is negative. I have a small concern that, in concentrating the sample for saliva, I have also concentrated the chemicals that are in the whiskey, and in doing so, made something that was toxic to either the saliva or the test itself. Without knowing what the ingredients are, it can be hard to say. In the end, I can only report that no saliva was detected.

On Fri, Feb 27, 2026 at 2:20 PM Arthur Young <cyberspider.awy@gmail.com> wrote:

> Joe - My partner told me that you called, asking for an update. Testing indicated a very, very weak positive reaction, which could be due to low quantity of saliva (either due to very small contact area or time) or advanced degradation. Our test here uses an antibody, so it's very specific to human saliva. I'd like to try to concentrate the sample to get a more confirmatory answer, or, we can proceed with DNA. *IF* there is advanced degradation, that could mean that the DNA is also compromised. If there's very little saliva, I should be able to get a profile, it just depends on HOW little. Want me to try concentrating the sample?
>
> (I'm at the DMV today because next week marks the 40th anniversary of my first driver's license (i.e., I turn 58). Ergo, my license expires, so yeah, I've got to do this. Anyway, no privacy here, so I hope that this email will suffice for now.)

On Wed, Feb 18, 2026 at 3:51 PM Arthur Young <cyberspider.awy@gmail.com> wrote:

Hi Joe - I've only been able to examination, sampling, and documentation of the bottles but not the analysis yet. Had a trial in NJ last week so things went a little sideways in my schedule. I hope to be done with testing this week.

On Wed, Feb 18, 2026 at 3:45 PM Vento, Joseph <jvento@seyfarth.com> wrote:

Hi Arthur – I just wanted to check in on the status with the testing of the two bottles. Please let us know when you have a chance.

Thank you.

Joe

**Joseph Vento** | Partner | Seyfarth Shaw LLP
620 Eighth Avenue | New York, New York 10018-1405
Direct: +1-212-218-5548
jvento@seyfarth.com | www.seyfarth.com

Seyfarth

CONFIDENTIALITY WARNING: This email may contain privileged or confidential information and is for the sole use of the intended recipient(s). Any unauthorized use or disclosure of this communication is prohibited. If you believe that you have received this email in error, please notify the sender immediately and delete it from your system.

**From:** Vento, Joseph
**Sent:** Friday, January 16, 2026 11:46 AM
**To:** Arthur Young <cyberspider.awy@gmail.com>
**Cc:** ayoung@guardian-forensics.org
**Subject:** Re: Fireball Whiskey Bottles

We represent the doctor's former employer.

Thank you.

Sent from my iPhone

On Jan 16, 2026, at 10:59 AM, Arthur Young <cyberspider.awy@gmail.com> wrote:

Joe - Yes, I did. No worries, it happens all of the time. Oddly, though, I had enough information to recognize what it would be. Please remind me: Are you representing the office that fired the doctor, or the doctor that is arguing wrongful termination? It doesn't matter either way, I just want to be sure that I give the right advice.

Arthur

P.S. - Sorry for the use of personal email, I'm not at a terminal. Copies of work emails get sent to my personal, so that I can reply from my phone.

On Fri, Jan 16, 2026 at 10:51 AM Vento, Joseph <jvento@seyfarth.com> wrote:

Hi Arthur – I am told the bottles were delivered to your lab yesterday at 10:51 a.m. Sorry for not giving you the heads up that they were en route. I just found this out a few minutes ago.

Please let me know if you received them.

Joe

**Joseph Vento** | Partner | Seyfarth Shaw LLP
620 Eighth Avenue | New York, New York 10018-1405
Direct: +1-212-218-5548
jvento@seyfarth.com | www.seyfarth.com

Seyfarth

CONFIDENTIALITY WARNING: This email may contain privileged or confidential information and is for the sole use of the intended recipien unauthorized use or disclosure of this communication is prohibited. If you believe that you have received this email in error, please notify the immediately and delete it from your system.

--

This e-mail, and any attachments thereto, is intended only for use by the addressee(s) and may contain legally privileged and/or confidential information. If you are not the intended recipient, please do not disclose, distribute or copy this communication. Please notify the sender that you have received this e-mail in error and delete the original and any copy of the e-mail.

--

This e-mail, and any attachments thereto, is intended only for use by the addressee(s) and may contain legally privileged and/or confidential information. If you are not the intended recipient, please do not disclose, distribute or copy this communication. Please notify the sender that you have received this e-mail in error and delete the original and any copy of the e-mail.

--

This e-mail, and any attachments thereto, is intended only for use by the addressee(s) and may contain legally privileged and/or confidential information. If you are not the intended recipient, please do not disclose, distribute or copy this communication. Please notify the sender that you have received this e-mail in error and delete the original and any copy of the e-mail.

--

This e-mail, and any attachments thereto, is intended only for use by the addressee(s) and may contain legally privileged and/or confidential information. If you are not the intended recipient, please do not disclose, distribute or copy this communication. Please notify the sender that you have received this e-mail in error and delete the original and any copy of the e-mail.

--

This e-mail, and any attachments thereto, is intended only for use by the addressee(s) and may contain legally privileged and/or confidential information. If you are not the intended recipient, please do not disclose, distribute or copy this communication. Please notify the sender that you have received this e-mail in error and delete the original and any copy of the e-mail.

--

This e-mail, and any attachments thereto, is intended only for use by the addressee(s) and may contain legally privileged and/or confidential information. If you are not the intended recipient, please do not disclose, distribute or copy this communication. Please notify the sender that you have received this e-mail in error and delete the original and any copy of the e-mail.

--

This e-mail, and any attachments thereto, is intended only for use by the addressee(s) and may contain legally privileged and/or confidential information. If you are not the intended recipient, please do not disclose, distribute or copy this communication. Please notify the sender that you have received this e-mail in error and delete the original and any copy of the e-mail.

--

This e-mail, and any attachments thereto, is intended only for use by the addressee(s) and may contain legally privileged and/or confidential information. If you are not the intended recipient, please do not disclose, distribute or copy this communication. Please notify the sender that you have received this e-mail in error and delete the original and any copy of the e-mail.

--

This e-mail, and any attachments thereto, is intended only for use by the addressee(s) and may contain legally privileged and/or confidential information. If you are not the intended recipient, please do not disclose, distribute or copy this communication. Please notify the sender that you have received this e-mail in error and delete the original and any copy of the e-mail.