# EXHIBIT G

Seyfarth Shaw LLP
Attention: Mr. Joseph Vento, Esquire
620 Eighth Avenue
New York, NY 10018-1405

October 02, 2026

*Re*: Fireball cinnamon whiskey bottles
Guardian Forensic Sciences Case #26F0003

Dear Mr. Vento –

Guardian Forensic Sciences has received and been conducting analyses to further your investigation. There are two primary scenarios of interest which would have led to the finding of the two 50-mL Fireball Cinnamon Whisky bottles in the office trash. Before discussing them, it is necessary to first explain that it's been known since the late 1990s that fingerprints can yield DNA profiles, by the scant trace of epithelial cells that are transferred to a surface, along with the oils that form the fingerprint. Latent fingerprint processing methods do not interfere with forensic DNA analysis, as long as the processing reagents are not contaminated. If performed carefully and properly, it is possible to develop both latent prints as well as DNA profiles, by preserving the latent prints photographically and then swabbing those areas for DNA. Lastly, DNA profiles can be obtained even from prints that are smudged, incomplete, or obliterated.

- **SCENARIO #1:** If an employee opens the bottles, drinks from them directly, caps them, and then discards them in the trash, then:
  - DNA can be obtained from the traces of saliva on the mouth of the bottles. The caps would have protected the DNA from contamination from other items in the trash. The undersides of the caps could have picked up traces of DNA via contact with the mouths of the bottles.
  - DNA can also be obtained from the exterior of the caps, although there is a risk of contamination from other items in the trash.
  - Fingerprints can be obtained from the body of the bottles.
    - DNA can also be obtained from any prints that are developed.
- **SCENARIO #2:** If an employee opens the bottles, pours them into a drinking container, caps the bottles, and then discards them in the trash, then:
  - There is no DNA on the mouth of the bottles, as there was never any physical contact with that area. Even if the bottle came into contact with the drinking container where DNA was present, the likelihood of picking up enough DNA for analysis is improbable.
  - DNA can also be obtained from the exterior of the caps, although there is a risk of contamination from other items in the trash.
  - Fingerprints can be obtained from the body of the bottles.
    - DNA can also be obtained from any prints that are developed.

There are other possible scenarios but they are of lesser concern to this analysis, such as a non-employee discarding the bottles in the office trash or an employee finding the bottles elsewhere, picks them up, and disposes of them in the office trash. It should be noted that the function of forensic DNA analysis is to answer the question of who touched the bottle, not when or why they touched it.

In this case, the function of forensic DNA analysis is to answer the question of whose DNA is on the bottles, not when, how, or why it got there. Accordingly, if provided with a reference DNA sample from an employee, a DNA profile can be generated, compared to those from the bottles to see if the employee can be included or excluded as a possible contributor.

**Initial examination**

A brown cardboard box was received, containing four air pillows and a clear and red plastic zipper bag containing two small, clear plastic bottles with red plastic caps, bearing yellow, red, and black labels marked "FIREBALL CINNAMON WHISKY." The bottles were randomly designated as Item 1.1 and Item 1.2:



2026-DSC_2193.JPG

Although latent fingerprints were regarded as less of a concern due to the manner in which they were collected and handled, it is the standard practice of Guardian Forensic Sciences to preserve evidence. The bottles were only handled by the neck of the bottle, near the red plastic safety rings next to the caps.

Both bottles contained a small trace of brown liquid and large, flat, clear, square-shaped crystals. Neither was disturbed at this time.



2026-DSC_2201.JPG

Swabs were taken of the exterior of the caps, in order to collect any latent epithelial cells that may have been deposited by the individual who opened and closed them. The following samples were taken and assigned an exhibit number as follows:

| ITEM NUMBER | DESCRIPTION | EXHIBIT NUMBER |
|---|---|---|
| 01.1 | Swab (1) of the exterior of the cap | EX01.1-1 |
| 01.2 | Swab (1) of the exterior of the cap | EX01.2-1 |

These samples were reserved for possible future analysis, as a risk of contamination was present. This step had to be performed first, however, as there is no way to access the mouths and undersides of the caps without touching the exterior of the caps in some way, which could have removed some of the latent epithelial cells.

Swabs were then taken of the mouths of the bottles and the undersides of the caps, in order to collect any epithelial cells that may have been deposited via saliva. The following samples were taken and assigned an exhibit number as follows:

| ITEM NUMBER | DESCRIPTION | EXHIBIT NUMBER |
|---|---|---|
| 01.1 | Swab (1) of the mouth of the bottle and the underside of the cap | EX01.1-2 |
| 01.2 | Swab (1) of the mouth of the bottle and the underside of the cap | EX01.2-2 |

**Phase I: Saliva testing**

Under Scenario #1, there may be saliva on the mouths of the bottles. EX01.1-1 and EX01.2-1 were tested for human salivary alpha-amylase, and enzyme that is highly characteristic of saliva. The results are as follows:

| EXHIBIT NUMBER | DESCRIPTION | HUMAN SALIVARY ALPHA-AMYLASE |
|---|---|---|
| EX01.1-2 | Swab (1) of the mouth of the bottle and the underside of the cap | negative |
| EX01.2-2 | Swab (1) of the mouth of the bottle and the underside of the cap | negative |

Negative results were not necessarily indicative that Scenario #1 was not true, as amylase is an enzyme that is made from proteins, which is prone to degradation faster than DNA. Given the time frames and storage conditions involved, it was possible that the amylase was no longer detectable, but that DNA still remained. The decision was made to advance to forensic DNA analysis.

**Phase II: DNA testing**

The samples (EX01.1-2 and EX01.2-2) were tested by deoxyribonucleic acid (DNA) analysis of short tandem repeats (STRs) using polymerase chain reaction (PCR) technology. The following steps were taken:

- The extraction of DNA was performed using an organic DNA extraction method.
- The quantitation of DNA was performed using Qiagen's Investigator Quantiplex Pro RGQ Kit.
- The amplification of DNA was performed using Promega's PowerPlex Fusion kit, which includes the thirteen core loci as specified by the FBI (D3S1358, D13S317, D16S539, D18S51, CSF1PO, TH01, vWA, D21S11, D7S820, D5S818, TPOX, D8S1179, and FGA), the seven expanded core loci as specified by the FBI (D1S1656, D2S441, D10S1248, D2S1338, D12S391, D19S433, and D22S1045), as well as Penta D, Penta E, the sex marker Amelogenin, and the male-specific marker DYS391.
- The analysis was performed on an ABI Prism 310 Genetic Analyzer.

The initial results were negative (see Appendix). However, in the four to six weeks that followed, the ABI Prism 310 Genetic Analyzer started to fail runs of known controls. A service visit by an engineer revealed that the genetic analyzer's laser was the problem and that it was no longer performing at an acceptable level. The laser unit is the means by which the analyzer detects DNA, but it also does not fail suddenly; it declines slowly, until it no longer performs at an acceptable level. Consequently, EX01.1-2 and EX01.2-2 were analyzed again, as weak results may not have been detected in the light of a weak laser. Secondary testing was still negative.

**Phase III: Cyanoacrylate ("superglue") fuming of the bottles for latent fingerprints**

Cyanoacrylate is the active ingredient in superglue. It has an extreme affinity for water, which it binds to and forms a white residue, even as a vapor. Consequently, it can be used to develop latent fingerprints on objects, under controlled environmental conditions, where traditional dusting methods might not work.

Before proceeding, control tests needed to be performed to reveal any unexpected issues. A new 50-mL bottle of Fireball Cinnamon Whisky was used as a control. Problems were revealed when trying to photograph the fingerprint that had been planted on it, due to the white latent fingerprint on the surface of a clear plastic bottle, regardless of the lighting conditions:




2026-DSC_3059.JPG | 2026-DSC_3060.JPG | 2026-DSC_3061.JPG | 2026-DSC_3062.JPG | 2026-DSC_3063.JPG | 2026-DSC_3064.JPG

The problem is that the substrate surface is clear, while the processed print is white; any effort to enhance the print also tended to either produce a glare that obscured the print or lighten the black background. Attempts to enhance the contrast digitally made the problem worse, not better.

The solution to the problem was to fill the bottle with a black material, which would render the bottle opaque. The material would need to be chosen carefully, as the bottle is made of plastic and vulnerable to many solvents that can be found in paint. A review of the components of various paints and liquid rubber products indicated that black Plasti Dip, which is a multi-purpose rubber coating material that forms a thick protective layer, would do the job. The test bottle worked adequately enough that it would only be a matter of finding the best lighting conditions.




2026-DSC_3066.JPG | 2026-DSC_3067.JPG | 2026-DSC_3068.JPG | 2026-DSC_3069.JPG | 2026-DSC_3070.JPG

Due to the need to line the interiors of the bottles with black Plasti Dip, the contents of the bottles would need to be removed and preserved, although there are no current analyses anticipated. The crystals and brown liquid were removed and preserved in a 2.0 mL microcentrifuge tube. Each bottle was then rinsed separately with 1 mL of absolute ethanol (*i.e.*, 200 proof), which was transferred to another 2.0 mL microcentrifuge tube. Lastly, each bottle

was then rinsed separately with 1 mL of deionized water, which was transferred to a third 2.0 mL microcentrifuge tube. The ethanol and water rinses were allowed to dry down overnight in order to prevent microbial growth.

| EXHIBIT NUMBER | DESCRIPTION |
|---|---|
| EX01.1-3 | Collection of brown liquid and clear crystals from Item 1.1 |
| EX01.1-4 | Ethanol rinse of interior of Item 1.1; evaporated |
| EX01.1-5 | Water rinse of interior of Item 1.1; evaporated. |
| EX01.2-3 | Collection of brown liquid and clear crystals from Item 1.2 |
| EX01.2-4 | Ethanol rinse of interior of Item 1.2; evaporated |
| EX01.2-5 | Water rinse of interior of Item 1.2; evaporated. |

Items 1.1 (top row) and 1.2 (bottom row) were fumed with cyanoacrylate. Although no latent prints of value were developed, there were white hazy areas, which are characteristic of locations where someone may have touched them, but were then smudged by later handling. These bottles were photographed prior to being swabbed.



2026-DSC_3104.JPG



2026-DSC_3110.JPG



2026-DSC_3120.JPG



2026-DSC_3122.JPG



2026-DSC_3124.JPG



2026-DSC_3125.JPG



2026-DSC_3127.JPG



2026-DSC_3132.JPG

The exteriors of Items 1.1 and 1.2 were swabbed and assigned an exhibit number, with particular attention paid to the white hazy areas. These swabs were added to the swabs of the caps that were taken previously, as both areas would have been handled by the same individual, as well as been exposed to the same contamination risk.

| EXHIBIT NUMBER | DESCRIPTION |
|---|---|
| EX01.1-1 | Swab (1) of the exterior of Item 1.1 + swab (1) of the exterior of the cap of Item 1.1 (taken previously). |
| EX01.2-1 | Swab (1) of the exterior of Item 1.2 + swab (1) of the exterior of the cap of Item 1.2 (taken previously). |

**Phase IV: DNA from the smudged prints**

The samples (EX01.1-1 and EX01.2-1) were tested by deoxyribonucleic acid (DNA) analysis of short tandem repeats (STRs) using polymerase chain reaction (PCR) technology, using the same methods mentioned previously (see Phase II). A DNA profile, consistent with a mixture of at least two people, was generated (see Appendix). Furthermore, this mixed DNA profile only contains an Amelogenin type of X, indicating that both contributors are female. The data was compared against laboratory staff as well as the employee who recovered the bottles and all were found to be inconsistent. Hence, they can all be excluded as possible contributors to these samples.

In order to perform further comparisons, reference DNA samples from any suspected individuals should be submitted.

Sincerely,

Arthur W. Young, B.S., ABC-MBT
Forensic Biology Specialist

# APPENDIX

## SUMMARY TABLE OF DNA RESULTS

| | | EXHIBIT NUMBER: | EX01.1-1 | 01.2-1 | 01.1-2 | 01.2-2 |
|---|---|---|---|---|---|---|
| | | DESCRIPTION: | Swab of the exterior of Item 1.1 + swab of the exterior of the cap of Item 1.1 | Swab of the exterior of Item 1.2 + swab of the exterior of the cap of Item 1.2 | Swab of the mouth of the bottle and the underside of the cap of Item 1.1 | Swab of the mouth of the bottle and the underside of the cap of Item 1.2 |
| POWERPLEX FUSION LOCI | BLUE DYE | Amelogenin: | X | X | NR | NR |
| | | D3S1358: | 14, 15, 16 | 16 | NR | NR |
| | | D1S1656: | NR | NR | NR | NR |
| | | D2S441: | NR | NR | NR | NR |
| | | D10S1248: | NR | NR | NR | NR |
| | | D13S317: | NR | NR | NR | NR |
| | | Penta E: | NR | NR | NR | NR |
| | GREEN DYE | D16S539: | 11, 12, 13 | 12 | NR | NR |
| | | D18S51: | NR | 14, 15 | NR | NR |
| | | D2S1338: | NR | NR | NR | NR |
| | | CSF1PO: | NR | NR | NR | NR |
| | | Penta D: | NR | NR | NR | NR |
| | YELLOW DYE | TH01: | 9 | NR | NR | NR |
| | | vWA: | 16, 18, 19 | NR | NR | NR |
| | | D21S11: | 31.2 | NR | NR | NR |
| | | D7S820: | NR | NR | NR | NR |
| | | D5S818: | NR | NR | NR | NR |
| | | TPOX: | NR | NR | NR | NR |
| | | DYS391: | NR | NR | NR | NR |
| | RED DYE | D8S1179: | 13, 15 | NR | NR | NR |
| | | D12S391: | NR | NR | NR | NR |
| | | D19S433: | NR | NR | NR | NR |
| | | FGA: | NR | NR | NR | NR |
| | | D22S1045: | NR | NR | NR | NR |