# EXHIBIT I

**OPTUM MEDICAL CARE OF NEW JERSEY, P.C.**
**1 HARMON PLAZA**
**FLOOR 10**
**SECAUCUS, NJ 07094**

March 15, 2023

Aarti Patel, M.D.
________________________
Monroe Township, NJ 08831

Re: Agreement (the "Agreement") Between Aarti Patel, M.D. and Optum Medical Care of New Jersey, P.C. (the "Practice")

Dear Dr. Patel:

This Letter Agreement confirms the terms and conditions whereby the Practice has agreed to employ you as a full-time physician-employee of the Practice, commencing upon completion of your credentialing with payors and upon a date mutually agreeable between you and the Practice (the "Start Date").

1. Services. You shall provide appropriate and necessary patient care services ("Services") in Cardiology in such mutually agreed upon Practice location(s). You hereby agree to provide such Services in accordance with the terms of this Agreement and all laws and obligations applicable to a physician.

2. Duties and Hours.

   a) You agree to: (i) serve the Practice faithfully and to the best of your ability; (ii) provide such professional Services as are reasonably required by the Practice, including, but not limited to, those set forth on Exhibit A annexed hereto; and (iii) devote your entire time, attention and energies to the business of the Practice during its regular office hours and at such other times as may be reasonably requested by the Practice. You shall provide on-call services as determined by the Practice without compensation.

   b) During your term of employment hereunder, you shall not, without the prior written consent of the Practice, engage in any other business or professional activity (other than as a passive investor), whether or not such business or professional activity is pursued for gain, profit or other pecuniary advantage.

   c) You shall perform the Services required of you under this Agreement at such Practice location as determined by the Practice, and at such hospitals as the Practice may direct from time to time.

d) You agree to perform your Services hereunder according to the highest professional and ethical standards and to fulfill the basic requirements of continuing medical education requisite with your professional license.

e) You shall keep and maintain, consistent with the Practice's policies, appropriate and accurate records, including both medical records and records supporting claims for reimbursement, relating to all professional Services rendered by you, all of which shall be the property of the Practice.

f) You will immediately notify the Practice, in writing, of any direct or indirect financial relationship, as defined in the federal physician self–referral prohibition statute and regulations (the "Stark Law") that you have with a person or entity that provides designated health services ("DHS"), as defined in the Stark Law. During the term of this Agreement, you shall not refer any Medicare or Medicaid patient to any person or entity for the provision of DHS if you (or one of your immediate family members, as defined in the Stark Law) has a direct or indirect financial relationship with such person or entity, unless such relationship satisfies one of the exceptions set forth in the Stark Law as determined by the Practice in its sole and absolute discretion.

g) You will be required to maintain compliance with HIPAA rules and regulations in the performance of duties under this Agreement including the use of Practice-owned or Physician-owned tools, software, and access to technology. The Practice in its sole discretions may require you to use specific tools, software applications and technology that are company-owned such as laptop computers, email, and Electronic Medical Records (EMR application) or on a device you own such as a smartphone.

3. <u>Compensation/Benefits</u>.

a) In consideration of the performance of your Services hereunder, the Practice shall pay you compensation in an amount equal to Four Hundred Fifty Thousand Dollars ($450,000.00) per annum or the pro-rata portion thereof. Your compensation shall be payable in bi-weekly installments in accordance with the Practice's payroll policies. If the Practice and you mutually agree on altering your work schedule to less than full-time, then the Practice shall pro-rate the annual salary to reflect the alteration. Your salary shall be prorated at the annual salary rate for any portion of a calendar year that you work with the Practice. "Contract Year" means any twelve-month period during the term of the Agreement that begins on the Start Date or any anniversary of the Start Date. Contract Years may be referred to sequentially, such that the "first Contract Year" means the twelve-month period beginning on the Start Date, the "second Contract Year" means the twelve-month period beginning on the first anniversary of the Start Date, and so forth.

i. You shall be compensated in accordance with the then-current Practice compensation model in the third Contract Year and beyond.

b) Your clinical schedule shall include working a minimum of thirty two (32) hours per week on average.

c) The Practice shall make a one-time signing bonus payment in the amount of Twenty Five Thousand Dollars ($25,000.00), less applicable taxes and withholdings, payable within ninety (90) days of the Start Date (the "Signing Bonus"). The Signing Bonus is contingent upon maintaining employment with the Practice for a period of twenty-four (24) months. If your employment with the Practice terminates during the twelve (12) month period immediately following the Start Date for any reason, or no reason, you agree to refund the entire Twenty Five Thousand Dollars ($25,000.00). If your employment with the Practice terminates between the first day of month thirteen (13) through the last day of month twenty-four (24) following the Start Date, you agree to return the proportionate share of the Signing Bonus for each month that you are not employed with the Practice. Specifically, for each month between thirteen and twenty-four that you are not employed with the Practice, you shall be required to refund the Practice one twenty-fourth of the Signing Bonus. By way of example, in the event that your employment with the Practice ceases fifteen (15) months after the Start Date, you will be required to reimburse the Practice in the amount of Nine Thousand Three Hundred Seventy Five Dollars ($9,375.00).

d) The Practice shall compensate you based upon your Work Relative Value Unit ("wRVU") Productivity (as hereinafter defined). Specifically, in the first Contract Year, in the event that you generate in excess of Seven Thousand Two Hundred (7,200) wRVUs per annum, you shall be compensated in the amount of Forty Five Dollars ($45.00) per wRVU produced from professional Services personally provided by you in excess of 7,200, inclusive of appropriate modifiers. For clarification, you will only be compensated for any wRVU personally generated in excess of Seven Thousand Two Hundred (7,200) wRVUs in the first Contract Year. For purposes of this Agreement, "wRVU Productivity" shall be defined as the product of multiplying the total units billed for each CPT Code during a given twelve (12) month period, by such appropriate Medicare wRVUs, as determined by the Practice, for each CPT Code.

i. In the second Contract Year, in the event that you generate in excess of Nine Thousand (9,000) wRVUs per annum, you shall be compensated in the amount of Forty Five Dollars ($45.00) per wRVU produced from professional Services personally provided by you in excess of 9.000, inclusive of appropriate modifiers. For clarification, you will only be compensated for any wRVU personally generated in excess of Nine Thousand (9,000) wRVUs in the second Contract Year. For purposes of this Agreement, "wRVU Productivity" shall be defined as the product of multiplying the total units billed for each CPT Code during a given twelve

(12) month period, by such appropriate Medicare wRVUs, as determined by the Practice, for each CPT Code.

e) You shall also be eligible to receive, as a value based incentive care bonus, up to Ten Thousand Dollars ($10,000.00) in the second Contract Year and future Contract Years, as solely determined by the Practice leadership (the "Quality Bonus"). For clarification, the Quality Bonus shall only be payable after the Second Contract Year and future Contract Years. The Quality Bonus shall be subject to all applicable State and Federal tax withholdings.

f) All bonus payments and salary increases shall be based on performance and as determined by the Practice. With the exception of Section 3(d) above, all bonus payments and salary increases remain entirely with the Practice's discretion.

g) Provided you remain a full-time employee of the Practice, you shall be entitled to participate in OptumCare's full-time benefits, in accordance with OptumCare's then current policy as may be amended from time-to-time.

4. Qualifications. As a continuing condition precedent to the Practice's obligations under this Agreement and prior to the provision of any Services by you hereunder, you shall hold a currently valid license and registration as a medical doctor in the State of New Jersey. Further to the foregoing, and for purposes of clarification, your employment with the Practice is contingent upon you obtaining your New Jersey State medical license prior to the commencement of your employment. You agree to perform your employment Services according to the highest professional and ethical standards and to fulfill the basic requirements of continuing medical education requisite with your professional license.

5. Billing and Collection.

a) You agree that all billings and collections for your Services provided during the Term (hereinafter defined) of your employment hereunder shall be carried out, at the Practice's election, in your name and provider number or the name and provider number of the Practice. You hereby assign to the Practice all rights to bill patients for professional services, and all rights to receive payments for professional services performed by you under this Agreement. You agree to execute such documentation as may be necessary, in the sole discretion of the Practice, to effectuate or evidence such assignment. You may not independently bill any patients for professional services performed by You under this Agreement.

b) You hereby authorize the Practice to endorse and deposit into its account any checks made payable to you on account of professional services rendered by you during the course of your employment at the Practice and you hereby grant the Practice a limited power of attorney to effectuate the foregoing.

c) You agree that any checks or funds made payable to or received by you for all professional Services rendered during the Term of your employment hereunder

shall be the exclusive property of the Practice and shall be promptly paid over or endorsed to the Practice for deposit in its account.

d) The Practice shall establish charges for your professional services in conformance with applicable laws and regulations. You acknowledge that the ultimate responsibility for coding rests with you, and not the Practice.

e) In the event this Agreement terminates for any reason, the Practice shall continue to have the right to bill for, collect, and retain any and all patient care revenues for Services rendered by you hereunder during the Term of your employment with the Practice.

f) The provisions of this Section 5 shall survive the termination of this Agreement.

6. Expenses. As of the Start Date, the Practice shall pay, or shall reimburse, you for (i) your hospital application fees and dues; (ii) your New Jersey State medical license renewal fees; (iii) your New Jersey Controlled Dangerous Substances ("CDS") registration renewal fees; and (iii) your U.S. Drug Enforcement Administration (the "DEA") registration renewal fees. Any other expenses incurred by you in the performance of your duties hereunder shall not be reimbursed to you without the prior written approval of the Practice.

7. Third Party Payor Program Requirements and Managed Care Plans.

a) You acknowledge that the Practice has advised you that it is a participant in various third party payment programs including, without limitation, Medicare, Medicaid, and Blue Cross, which participation is essential to the financial viability of Practice. Therefore, in connection with the subject matter of this Agreement, you agree, subject to applicable law, to fully cooperate with the Practice and to provide assistance to the Practice in meeting all requirements for participation and payment associated with such third party payment programs.

b) The Practice, in its sole discretion, may negotiate the terms of and enter into "managed care" agreements with various sponsors that affect the provision of Services hereunder, including, without limitation, grants for managed care, preferred provider organizations and health maintenance organizations pursuant to which you shall be required or requested to provide Services to participants thereof. You agree to participate in such programs and provide Services in connection therewith as reasonably requested by the Practice.

8. Malpractice Insurance and Claims.

a) The practice shall provide you with professional liability insurance coverage, on a One Million Dollars ($1,000,000) per occurrence and Three Million Dollars ($3,000,000) in the aggregate, or such other amounts as may be required by law or local market requirements, in accordance with the Practice's then-current policy as

may be amended, replaced or terminated from time-to-time. You shall notify the Practice immediately of any claims filed against you.

b) If "tail" coverage becomes necessary during the term of this Agreement (due to a change in malpractice coverage) or when your employment with the Practice is terminated, the Practice will provide automatic, unlimited "tail" coverage for the scope of your services performed a) under this Agreement and b) on behalf of the Practice; provided, however, that if your employment with the Practice terminates for cause in accordance with Section 10(b) below, you shall be responsible for the cost incurred by the Practice to obtain such tail coverage.

c) It is fully understood and agreed that insurance will only be provided under the Practice's medical professional liability (malpractice) insurance or self-insurance for any act, omission, loss, claim, or liability of any nature, which occurs within the scope of your Services performed under this Agreement. For clarification, malpractice insurance will not be provided for any claim, or liability of any nature, which occurs or was reported prior to such time as you began rendering Services on behalf of the Practice.

d) You agree to cooperate with the Practice in the management of a claim. Specifically, you agree to: (i) attend hearings, trials, settlements, conferences, depositions, and any other proceedings; (ii) secure and give evidence; (iii) cooperate fully with the Practice in the management of any claim; (iv) fill out forms and send to the Practice any information the Practice requests; (v) meet and cooperate with the representatives and attorneys of the Practice working on the claim; and (vi) not to voluntarily make any payment, assume any obligation or incur any expense on the claim without the consent of the Practice.

9. Term. Your employment with the Practice shall commence on such date to be agreed upon between you and the Practice (the "Effective Date"). This Agreement shall continue unless otherwise terminated as hereinafter provided.

10. Termination.

a) Either party may terminate this Agreement without cause at any time upon ninety (90) days prior written notice to the other.

b) This Agreement may be terminated by the Practice without prior written notice at any time by the Practice for cause which shall include, without limitation, any of the following events:

i. your license to practice medicine in the State of New Jersey, your CDS registration, your DEA registration or your Board Certification in Cardiology and Clinical Cardiac Electrophysiology suspended, revoked, or otherwise restricted or terminated;

ii. your failure or inability to qualify for or maintain professional liability insurance coverage for any reason (other than non-payment by the Practice);

iii. your death or disability. Disability shall be defined as your inability to carry out your duties under this Agreement for a consecutive period in excess of ninety (90) consecutive days or any one hundred and twenty (120) or more days during any three hundred sixty-five (365) day period;

iv. you engage in prolonged or repeated unauthorized absences from the Practice's offices;

v. other conduct such as to create a threat to the health, safety, or welfare of patients, demonstrates a failure to carry out your professional responsibilities hereunder, or is otherwise contrary to the best interest and welfare of the Practice and/or its patients;

vi. you are convicted of a serious misdemeanor or felony, or are suspended from or otherwise not permitted to continue as a provider in the Medicaid and/or Medicare programs;

vii. your medical staff privileges at any hospital are suspended (except if such suspension is imposed temporarily in order to complete medical records), terminated, or not renewed so that you lose the right to practice medicine at such hospital;

viii. you are suspended by or expelled from any professional medical organization (other than for non-payment of dues), or you resign from any such organization under threat of disciplinary action;

ix. you are inattentive to, or neglectful of, the duties to be performed by you hereunder;

x. you either provide, or attempt to provide, Services while under the influence of alcohol, drugs, or other mood-altering substances;

xi. you commit any material violation of this Agreement;

xii. you either fail to comply with the policies of the Practice or reasonable directions and orders given by the Practice's management team in connection with the Practice's practice, or you engage in any conduct reasonably deemed by the Practice to be injurious to its best interests;

xiii. the Practice determines that you may have engaged in unprofessional conduct pursuant to the Code of Medical Ethics of the American Medical Association.

c) This Agreement may be terminated at any time upon the mutual written agreement of you and the Practice.

d) Upon termination of this Agreement for any reason, you shall only be entitled to receive the accrued but unpaid base salary owed to you under Section 3(a) as of the date of your termination. You shall not be entitled to any additional compensation hereunder or otherwise.

e) In the event your employment is terminated pursuant to Section 10(a), above, then the Practice may, at its option, require you to cease to provide Services to the Practice and vacate the Practice's offices at any time prior to the expiration of the ninety (90) day period following notice of termination, in which case the Practice will make payments to you in an amount equal to what your base salary would have been had you continued to provide Services on the Practice's behalf from the last date of the provision of Services on the Practice's behalf through the end of such ninety (90) day period. Such payment shall fully satisfy the Practice's obligations to you with respect to the compensation owed to you during such ninety (90) day period. Payment shall be made only if a Separation Agreement and General Release is executed.

f) You agree that upon the termination of your employment (irrespective of the time, manner or cause of termination), you will surrender and deliver to the Practice, at the Practice's principal office, all property of the Practice in your possession or control, including but not limited to patient records and/or charts, computers, IT equipment, keys, lists, telephone numbers, addresses, books, records or data of every kind (and all copies thereof) relating to or in connection with the Practice's patients and business.

g) You are not entitled to any severance payment of any type at any time following the termination of this Agreement for any reason.

11. Disclosure of Information; Non-Solicitation.

a) You acknowledge that the names of the Practice's patients and referral sources, as may exist from time to time, and the Practice's financial statements, business plans, internal memoranda, reports, audits, patient surveys, employee surveys, operating policies, quality assurance materials, fees, and other such materials or records of a proprietary nature (collectively, the "Confidential Information") are valuable, special and unique assets of the Practice and are deemed to be trade secrets.

b) You agree that you will not, after the date hereof and for so long as any such Confidential Information may remain confidential, secret, or otherwise wholly or partially protectable: (i) use the Confidential Information, except in connection with your retention by the Practice, or (ii) divulge any such Confidential

Information to any third party, unless the Practice gives its prior written consent to such use or divulgence.

c) You shall not: (i) at any time during the term of this Agreement and the three (3) year period after your employment terminates interfere with the Practice's relationship with, or endeavor to entice away from the Practice, any hospital or managed care entity with which the Practice has a contractual relationship, or any person who was a patient, an employee or a referral source of the Practice during the term of your employment with the Practice, or (ii) at any time during the term of this Agreement and the five (5) year period after your employment terminates solicit or hire of any employee or partner of the Practice or any entity affiliated with the Practice (including, without limitation, Riverside Medical Management, LLC, ProHEALTH Medical Management, LLC, ProHEALTH Care Associates, LLP and ProHEALTH Ambulatory Surgery Center, Inc.) to be employed by or join with you in any capacity, either before or after you leave the Practice.

d) In the event of a breach or threatened breach by you of the provisions of this Section 11, the Practice shall be entitled to an injunction restraining you from (i) disclosing, in whole or in part, any such Confidential Information; (ii) interfering with the Practice's relationships with its employees, patients and referral sources, or with any hospital or managed care entity with which the Practice has a contractual relationship; and/or (iii) rendering any professional medical services to (A) any patient of the Practice who has been solicited by you in violation of this Agreement, or (B) any person, firm, corporation, association, or other entity to whom any such Confidential Information, in whole or in part, has been disclosed by you or is threatened to be disclosed by you.

e) Nothing contained herein shall be construed as prohibiting the Practice from pursuing any other remedies available to the Practice for such breach or threatened breach, including the recovery of damages from you.

12. <u>Restrictive Covenant</u>.

a) In the course of your employment with the Practice you will be introduced to the Practice's referring physicians and patients as well as hospital personnel, other health care providers, and the like. You may also be given the opportunity to become a participating provider in various health maintenance organizations and managed care plans with which the Practice's physicians have existing contractual relationships. Termination of your employment for any reason or in any manner, followed by your continuing to practice medicine in the same geographic area location of the Practice, would thereby enable you to take many of those sources of the Practice with you to the detriment of the Practice.

b) In light of the foregoing, you covenant and agree that upon the termination of your employment with the Practice for any reason, you shall not, for a period of two (2) years thereafter, except with the written consent of the Practice, either directly or

indirectly within a ten (10) mile radius of (I) the office location where you provided the majority of your clinical Services for the Practice in the Twelve (12) month period preceding termination; and (II) any hospital that the Practice obtained or maintained privileges for you while you were an employee of the Practice: (i) engage in the practice of medicine in the specialty of Cardiology (whether as an employee, independent contractor, shareholder, member, partner, or otherwise and whether as a separate specialty or in conjunction with any other practice of medicine); or (ii) operate or have any financial or other interest in any medical practice providing Cardiology services.

c) You acknowledge that: (i) the terms contained in this Section 12 are necessary for the reasonable and proper protection of the Practice's interests; (ii) each and every covenant and restriction contained in this Section 12 is reasonable in respect of such matter, length of time and geographical area; and (iii) the Practice has been induced to enter into this Agreement in part due to your representations that you will abide by and be bound by each of the aforesaid covenants and restrictions.

d) In the event of breach or alleged breach by you of the provisions of this Section 12, you agree to refrain from violating the restrictive covenant set forth above during any judicial proceeding until such matter is conclusively settled on its merits pursuant to such proceeding. In connection therewith, you agree that the Practice shall be entitled to an injunction restraining you from violating the terms of the restrictive covenant set forth herein (without the necessity of securing a bond) and any other legal or equitable remedies available for such a breach or threatened breach. In addition, and without limiting the Practice's rights, the Practice shall be entitled to liquidated damages in the amount of One Thousand Dollars ($1,000.00) for each day that you are determined to have violated the foregoing restrictive covenant. This sum shall be considered as liquidated damages and not as a penalty and is agreed to by the parties inasmuch as there is no other precise method of determining the Practice's damages in the event of your violation of the restrictive covenant set forth in this Section 12.

e) If you violate this restrictive covenant and the Practice brings legal action for injunctive or other relief, the Practice shall not, as a result of the time involved in obtaining the relief, be deprived of the benefit of the full period of the restrictive covenant. Accordingly, the restrictive covenant shall be deemed to have the duration specified herein, computed from the date the relief is granted but reduced by the time between the period when the restriction began to run and the date of the first violation of the covenant by you.

f) If any court or tribunal of competent jurisdiction determines that the duration, geographical limit or any other aspect of the provisions of Section 11 hereof and/or this Section 12 are unenforceable in accordance with their terms in a particular jurisdiction, the provisions of Section 11 hereof and/or this Section 12, as the case may be, shall not terminate, but shall be deemed amended to the minimum extent required to render them valid and enforceable in such jurisdiction and such court

or tribunal is hereby authorized and directed to amend this Agreement only to the minimum extent necessary to make it valid and enforceable to the maximum extent permitted by law in said jurisdiction.

g) In the event of any litigation at law or in equity with respect to any breach of the provisions of Section 11 hereof and/or of this Section 12, the Practice shall be entitled to recover any and all reasonable attorneys' fees and other costs of litigation from you should the Practice be the prevailing party in such litigation.

h) The existence of any claims or causes of action by you against the Practice, whether predicated upon this Agreement or otherwise, shall not constitute a defense to the enforcement by the Practice of the provisions of Section 11 hereof and this Section 12.

i) The parties acknowledge that the provisions of this Section 12 are necessary and reasonable in order to protect the Practice in the conduct of its business, particularly in light of the difficulty in ascertaining damages in the event of a breach

j) The terms of Section 11 hereof and this Section 12 shall survive the termination of this Agreement.

13. Bylaws, Rules and Regulations. As a condition of your employment hereunder, you agree at all times to comply with the policies, rules and regulations of the Practice as same are adopted and/or modified by the Practice in its sole discretion from time to time.

14. Reports/Records. The ownership and right of control of all reports, and supporting documents prepared in connection with patient and/or administrative Services performed hereunder shall vest exclusively in the Practice; provided, however, you shall be provided with reasonable access to such reports, records, and supporting documentation for reasonable purposes consistent with applicable law. You shall not, without the express written consent of the Practice or the patient, remove them from the Practice's office, copy them, allow them to be removed from the Practice's office, or allow them to be copied, except as reasonably required in the ordinary course of a patient's care provided by you as an employee of the Practice. Upon the termination of your employment with the Practice and in order to ensure continuity of care for the Practice's patients, the Practice shall promptly provide you with copies of all patient records pertaining to any patient who requests in writing that such records be provided to you. The cost of photocopying such patient records, however, shall be your responsibility.

15. Representations and Warranties.

a) You represent and warrant to the Practice as of the date hereof and throughout the term of this Agreement that:

i. you are a physician duly licensed and registered to practice medicine in the State of New Jersey with a specialty in Cardiology;

ii. you are Board Certified in Cardiology and Clinical Cardiac Electrophysiology;

iii. you are a certified provider in the Medicare and Medicaid programs;

iv. you are under no contractual or other restriction or obligation which is inconsistent with the execution of this Agreement, the performance of your duties hereunder, or the rights granted to the Practice hereunder;

v. you are able to perform the functions of your position (essential or marginal) with or without reasonable accommodation;

vi. you are not, as of the Commencement Date, a defendant in any civil, criminal or administrative suit or proceeding involving the practice of medicine, and are unaware of any threatened actions of such a nature;

vii. you have conducted your professional activities in accordance with all applicable Federal, state and city laws and regulations;

viii. you will promptly disclose to the Practice: (i) the existence and basis of any proceedings against you that are instituted in any jurisdiction by any plaintiff, governmental agency, health care facility, peer review organization or professional society which involves any allegation of substandard care or professional misconduct; and (ii) any allegation of substandard care or professional misconduct raised against you by any person or agency during the Term of this Agreement;

ix. you possess knowledge and skill in Cardiology and Clinical Cardiac Electrophysiology comparable to other physicians practicing Cardiology and Clinical Cardiac Electrophysiology in the geographic area serviced by the Practice;

x. you shall complete, in a timely manner, adequate, legible and proper medical records with respect to all Services rendered to patients pursuant to this Agreement;

xi. you shall participate in such commercial insurance programs, health maintenance organizations, managed care plans, independent practice associations, preferred provider organizations, and other such healthcare delivery systems with which the Practice may contract or affiliate;

xii. you shall complete, in a timely manner, adequate and legible time sheets and other documents necessary for the Practice to compensate you and to

obtain reimbursement for the Services provided by you under this Agreement;

xiii. you have current CDS and DEA registrations issued by the relevant governmental authority, which registrations have not been, as of the Effective Date, surrendered, suspended, revoked or restricted in any manner, nor are there any proceedings pending which could restrict such registrations in any manner;

xiv. in connection with the provision of Services pursuant to this Agreement, you shall use the Practice's equipment, instruments, pharmaceuticals and supplies for the purpose for which they are intended and in a manner consistent with sound medical practice;

xv. to the best of your knowledge, you have never been reported to the National Practitioner Data Bank or to the Healthcare Integrity and Protection Data Bank; and

xvi. you will notify the Practice immediately if any of the foregoing shall become, in any manner, untrue.

b) The Practice represents and warrants to you that:

i. it is a duly formed professional corporation organized and in good standing under the laws of the State of New Jersey; and

ii. it has the power and authority to carry on its business as currently conducted.

16. <u>Indemnification</u>. Each party hereby agrees to indemnify, defend and hold the other party harmless from all liabilities, costs, and expenses that the other party may incur as a result of the first such party's acts or omissions, including court costs and attorneys' fees; provided, however, that the foregoing indemnification obligation shall not apply to the extent: (i) the indemnified party's costs, expenses, and liabilities are fully covered by the proceeds of insurance; and/or (ii) any insurance company may assert any claims against the indemnifying party as a result of such indemnification obligation. The terms of this Section 16 shall survive the termination of this Agreement.

17. <u>Overall Performance Expectations</u>. During the term of your employment hereunder, there are several specific items which are essential to your overall success. These include, but are not limited to, your clinical competence; your acceptance by patients, physicians and hospital personnel; your time commitment to the practice; your productivity and efficiency in handling patient matters; your willingness and effectiveness in promoting the Practice's practice and yourself; your acceptance of the burdens and responsibilities inherent in operating a successful medical practice; your interest in the Practice's practice

from an entrepreneurial standpoint; and a clearly demonstrated ability to work well together with the other physicians and staff members of the Practice.

18. No Ownership Interest. You hereby acknowledge that your employment hereunder does not imbue you with any financial interest in the Practice's accounts receivable, furniture, equipment, leasehold, leasehold improvements, patient charts, records, and other assets.

19. Prior Acts. It is expressly acknowledged by you that the Practice is not liable for any acts or omissions of medical malpractice incurred by you prior to the commencement date of your employment hereunder and that you shall indemnify and hold the Practice harmless from any liabilities, costs and expenses incurred by the Practice with respect to any such acts or omissions (such indemnification obligation shall survive the termination of this Agreement).

20. Disclosure. You agree that during the Term of your employment you will disclose solely to the Practice all ideas, methods, plans, or improvements known by you which relate, directly or indirectly, to the practice of the Practice, whether acquired by you before or during your employment with the Practice; provided, however, that nothing in this paragraph shall be construed as requiring any such communication where the idea, method, plan or improvement is lawfully protected from disclosure as a trade secret of a third party or by any other lawful prohibition against such communication.

21. Authority To Contract. You shall have no authority to enter into any contracts, other than this Agreement or any amendments hereto which have been executed by the Practice, which shall be binding upon the Practice, or otherwise create obligations on the part of the Practice.

22. Notices. Any notices required or permitted to be given under this Agreement shall be sufficient if in writing, and if personally served, sent by registered or certified mail, return receipt requested, or sent by overnight courier specifying next business day delivery, in each case addressed to your residence (in the case of you) or to the principal office of the Practice (in the case of the Practice).

23. Entire Agreement. This instrument contains the entire agreement of the parties with respect to the subject matter hereof. It may not be changed, except by a writing signed by both parties.

24. Savings Clause. If any provision of this Agreement or the application of any provision hereof to any person or circumstances is held invalid, the remainder of this Agreement shall not be affected unless the invalid provision substantially impairs the benefits of the remaining portions of this Agreement.

25. Waiver.

a) Any consent or waiver executed in writing by a party shall be binding upon such party from and after the date of execution thereof unless a later or earlier date is specified therein.

b) No delay or failure to exercise any remedy or right occurring upon any default shall be construed as a waiver of such remedy or right, or acquiescence in such default, nor shall it affect any subsequent default of the same or a different nature.

26. Headings. All headings and captions in this Agreement are for convenience only. They shall not be deemed part of this Agreement and shall in no way define, limit, extend or describe the scope or intent of any provision hereof.

27. Further Assurances. The parties shall execute and deliver all documents, provide all information and take or forbear from all such action as may be reasonably necessary or appropriate to achieve the purposes set forth in this Agreement.

28. Successors And Assigns. This Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their respective heirs, executors, administrators, successors and assigns. This Agreement, and any portion of this Agreement, may not be assigned to any other individual, group, partnership or entity without the prior written consent of the Practice.

29. Counterparts. This Agreement may be executed electronically or otherwise in any number of counterparts via electronic transmission or otherwise, each of which shall be deemed an original and all of which together shall constitute one and the same instrument.

30. Governing Law. This Agreement shall be governed by the laws of the State of New Jersey. This Agreement shall only be amended or modified by a written instrument signed by both parties. This Agreement has been duly authorized by the Practice and will be, when executed by all parties, a legal and binding obligation of the Practice.

31. Venue and Acceptance of Service of Process. Each party to this Agreement hereby agrees and consents that any legal action or proceedings with respect to this Agreement shall only be brought in and subject to the exclusive jurisdiction of the courts of the State of New Jersey and in the County of Hudson or the United States District Court for the District of New Jersey and shall be adjudicated by a judge at a bench trial without a jury. By execution and delivery of this Agreement, each party hereby (i) accepts the jurisdiction of the aforesaid courts; (ii) agrees to be bound by any judgment of any such court with respect to this Agreement; (iii) waives, to the fullest extent permitted by law, any objection which it may now or hereafter have to the venue set forth above; and (iv) further waives any claim that any such suit, action or proceeding brought in any court has been brought in an inconvenient forum.

32. Legal Representation. Each party to this Agreement acknowledges that they have each been advised of their respective right to engage independent legal counsel of their own selection in connection with the negotiation, review and execution of this Agreement.

33. Social Media. You are prohibited from using the Practice's (or any affiliate of the Practice) name, logo or brand on your social media including but not limited to Facebook, Instagram, YouTube, etc.

34. Attorneys' Fees. The prevailing party in any litigation involving this Agreement shall be entitled to all expenses incurred, including but not limited to, reasonable attorneys' fees and court costs from the non-prevailing party.

*Remainder of page intentionally left blank; signature page follows*

If this letter accurately reflects your understanding of our agreement, kindly indicate your acceptance to the above terms and conditions by providing your signature in the space provided below.

Very truly yours,

Optum Medical Care of New Jersey, P.C.

Date: 03/21/2023

By: Gaurang Brahmbhatt (Mar 21, 2023 14:35 EDT)

AGREED TO AND ACCEPTED BY:

Date: 03/21/2023

By: Aarti Patel (Mar 21, 2023 13:18 EDT)
Aarti Patel, M.D.

# EXHIBIT A

## PHYSICIAN DUTIES AND RESPONSIBILITIES

(i) Provide medical care as related specifically to the specialty of Cardiology.

(ii) Provide medical coverage at such facilities of the Practice as designated by the Practice from time to time.

(iii) Cooperate with the Practice's designees to ensure that operations are consistent with the Practice's medical policies and professional standards.

(iv) Cooperate and participate in the implementation and revision of policies affecting medical practice and the quality of health care rendered by the Practice.

(v) Participate in and assist with in-service and continuing education programs for physicians, nurses, and other personnel employed by or associated with the Practice.

(vi) Cooperate in the completion of any necessary forms and contracts for third-party reimbursement or other purposes.

(vii) Prepare and maintain legible, orderly and clinically complete medical records in accordance with the Practice's policies and as required by the Practice and/or any applicable laws, ordinances, standards of medical practice, risk management or quality assurance programs, or as required by external accreditation organizations.

(viii) Work in a collaborative manner with the Practice's physicians and staff and conduct yourself ethically and in a manner which shall preserve and maintain the dignity and integrity of the Practice's physicians, employees and patients.

(ix) Convey compassion and concern for the patient's problems and dedication to alleviating those problems and to providing comfort and care to those in need.

(x) Provide full and utmost cooperation to the Practice's attorneys in any litigation and any other matters that may arise during or after the term of this Agreement.

(xi) Cooperate with and abide by the policies and decisions of the Practice.

(xii) Perform all CME requirements reasonably desirable to maintain and improve your professional skills.

(xiii) Perform your duties hereunder in accordance with such standards of professional ethics and conduct as promulgated by the American Medical Association, the New Jersey State Departments of Health and Education, applicable certifying boards and such other bodies (formal, informal, governmental or otherwise) as are generally regarded as sources of guidance and direction with regard to the professional services rendered by the Practice.

(xiv) Perform such other duties as are reasonably requested by designees of the Practice based upon its operational needs.