**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| AARTI PATEL, M.D.,<br><br>Plaintiff,<br><br>v.<br><br>OPTUM MEDICAL CARE OF NEW JERSEY, P.C., and MAHESH TEKRIWAL, M.D.,<br><br>Defendants. | Civil Action No.: 3:24-cv-06133 |

# DEFENDANTS' REPLY IN FURTHER SUPPORT OF THEIR MOTION TO COMPEL DNA TESTING AND OPPOSITION TO PLAINTIFF'S MOTION FOR A PROTECTIVE ORDER

**On the Brief:**
Joseph M. Vento, Esq.

SEYFARTH SHAW LLP
620 Eighth Avenue
New York, NY 10018
(212) 218-5500
*Attorneys for Defendants*

# TABLE OF CONTENTS

**Page**


PRELIMINARY STATEMENT .......... 1

LEGAL ARGUMENT .......... 1

I. THE PARTIES AGREE ON THE APPLICABLE LEGAL STANDARD THAT GOVERNS DEFENDANTS' MOTION .......... 1

II. THE COURT SHOULD GRANT DEFENDANTS' MOTION TO COMPEL AND DENY PLAINTIFF'S MOTION FOR A PROTECTIVE ORDER .......... 3

A. Plaintiff Has Placed Her DNA Profile "In Controversy" and Good Cause Exists to Grant the Motion .......... 4

B. Plaintiff's Record Mischaracterizations Are Red Herrings .......... 7

III. PLAINTIFF'S LACHES ARGUMENT IS MISPLACED .......... 10

IV. DEFENDANTS OPPOSE ANY DNA TESTING OF OTHER OFFICE EMPLOYEES .......... 12

CONCLUSION .......... 12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*D'Angelo v. Potter*,
224 F.R.D. 300 (D. Mass. 2004) ........ 2, 4

*Davis v. The City of New York*,
2019 WL 3252747 (E.D.N.Y. July 18, 2019) ........ 2, 5

*Knorr v. Smeal*,
178 N.J. 169 (2003) ........ 10

*McGrath v. Nassau Health Care Corp.*,
209 F.R.D. 55 (E.D.N.Y. 2002) ........ 2

*Petrella v. Metro-Goldwyn-Mayer, Inc.*,
572 U.S. 663 (2014) ........ 10

*Santana Prods., Inc. v. Bobrick Washroom Equip., Inc.*,
401 F.3d 123 (3d Cir. 2005) ........ 10

*Soares v. Bondi*,
2025 WL 554272 (C.D. Cal. Feb. 14, 2025) ........ 2

**Rules**

Fed. R. Civ. P. 26(c) ........ 2

Fed. R. Civ. P. 35(a) ........ 1

Fed. R. Evid. 401 ........ 5

Pursuant to the Court's Order (ECF No. 98), dated November 16, 2026, Defendants Optum Medical Care of New Jersey, P.C. ("Optum") and Mahesh Tekriwal, M.D., through their undersigned counsel, submit this joint Reply in Support of Defendants' Motion to Compel (ECF No. 89) and Opposition to Plaintiff's Cross-Motion for Protective Order (ECF No. 96).

## PRELIMINARY STATEMENT

As detailed below, Plaintiff's Brief (ECF No. 95-15, "Plf. Br.") actually ***supports*** Defendants' central argument. Namely, the DNA test Defendants' seek is discoverable because Plaintiff has squarely put in dispute whether she possessed and disposed of the Fireball Bottles found in the employee bathroom trashcan on January 26, 2024. Notwithstanding her repeated mischaracterizations of the relevant procedural history and evidentiary record (addressed below), Plaintiff makes clear that she intends to argue to a jury that Defendants, acting with a retaliatory motive, "devised a more nefarious scheme to fire Dr. Patel: falsely accusing her of drinking on the job." (Br. at 9.) As Plaintiff's theory of liability renders evidence concerning her consumption of alcohol in the office relevant, her arguments opposing DNA testing of the Fireball Bottles ring hollow. For the reasons described below and in Defendants' Motion, Defendants respectfully request that the Court grants their Motion to Compel and deny Plaintiff's cross-motion.

## LEGAL ARGUMENT

### I. THE PARTIES AGREE ON THE APPLICABLE LEGAL STANDARD THAT GOVERNS DEFENDANTS' MOTION

The parties agree that Federal Rule of Civil Procedure 35(a) governs the Defendants' Motion to Compel, such that the Defendants must show that Plaintiff's DNA profile and its comparison to the DNA profiles found on the Fireball Bottles is "in controversy," and that there is "good cause" to order Plaintiff to submit to the

DNA testing. *See* Br. at 24. Courts applying these standards to these motions have required the movant to show that the proposed DNA testing would provide relevant evidence not available through other means that "goes directly to the question of liability." *See D'Angelo v. Potter*, 224 F.R.D. 300, 304 (D. Mass. 2004); *see also* Plf. Br. at 27 (adopting Defendants' formulation of "good cause" from *D'Angelo*). Additionally, courts should consider whether there is a reasonable possibility that DNA testing will yield a match, and whether the moving party's need for the evidence outweighs the impact on the opposing party's privacy rights. *See Davis v. The City of New York*, 2019 WL 3252747, at *2 (E.D.N.Y. July 18, 2019) (citing *McGrath v. Nassau Health Care Corp.*, 209 F.R.D. 55 (E.D.N.Y. 2002)).

Further, to succeed on her cross-motion for protective order, Plaintiff must demonstrate that good cause exists to prohibit the DNA test. Fed. R. Civ. P. 26(c). If the Court grants the Defendants' Motion to Compel, then Plaintiff's cross-motion fails, and vice versa. *See Soares v. Bondi*, 2025 WL 554272, at *4 n.5 (C.D. Cal. Feb. 14, 2025) (granting motion to compel DNA testing and deny motion for protective order where arguments for protective order "mirror" arguments in opposition to motion to compel); *see also* Plf. Br. at 32 (arguing that good cause exists to enter protective order if the Court decides that Defendants did not meet burden on Motion to Compel).

## II. THE COURT SHOULD GRANT DEFENDANTS' MOTION TO COMPEL AND DENY PLAINTIFF'S MOTION FOR A PROTECTIVE ORDER

As discussed in the Defendants' opening brief and confirmed by Plaintiff in her brief, Plaintiff has put her DNA profile directly "in controversy" by arguing that Defendants fabricated allegations that Plaintiff was drinking on the job as part of its retaliatory efforts to terminate her employment. (ECF No. 89-1 at 12-13; Plf. Br. at 13-16). Given Plaintiff's vociferous contention that she was never in possession of the Fireball Bottles, and that Defendants intentionally manufactured the drinking allegations for unlawful purposes, evidence that Plaintiff touched or physically interacted with the Fireball Bottles – thereby reasonably indicating they were her bottles – is squarely relevant and material.

Defendants have also established that testing Plaintiff's DNA will yield a reasonable possibility of a match, as DNA testing on the Fireball Bottles has identified two female DNA profiles, Plaintiff admits that she was at the office on the date in question, and witness testimony and record evidence suggest Plaintiff left the office abruptly in the middle of the day, returned in possession of a brown paper bag, and smelled of alcohol. (ECF No. 89-1 at 6-8.) Finally, the balance of interests weighs in favor of granting Defendants' Motion to Compel, as Defendants' need for the evidence outweighs the minimal impact on Plaintiff's privacy interests. (*Id.* at 18-19.)

A. Plaintiff Has Placed Her DNA Profile "In Controversy" and Good Cause Exists to Grant the Motion

Plaintiff's Opposition leaves no doubt that the requested DNA testing would produce relevant evidence that goes to the core of Plaintiff's theory of liability. Plaintiff contends that Defendants responded to Plaintiff's complaint to Human Resources by "falsely accusing her of drinking on the job" to create a pretextual basis to terminate her employment. (Plf. Br. at 9). Defendants, in contrast, contend that Optum initiated an investigation into Plaintiff's drinking as a good-faith response to employee reports concerning Plaintiff's conduct and Ms. Perrini's discovery of the Fireball Bottles on January 26,2024, and Plaintiff's conduct during the investigation led to the legitimate, non-discriminatory termination of her employment. (ECF No. 89-1 at 6-9.) If Plaintiff's DNA matches either of the two female DNA profiles found on the Fireball Bottles, this evidence directly undermines her theory of liability and supports Defendants' defense. Accordingly, the DNA evidence Defendants seeks "goes directly to the question of liability," and is not "sought solely for the purposes of impeachment;" thus, Defendants have established that "good cause" exists to grant their Motion to Compel. *See D'Angelo*, 224 F.R.D. at 304.

While Plaintiff correctly notes that "'drinking on the job' is not one of the reasons Defendants have proffered for having fired [Plaintiff]," this premise does not support Plaintiff's conclusion that DNA testing would be "irrelevant" to the case.

(Plf. Br. at 24-25). Plaintiff argues that the Defendants fabricated allegations and evidence of her drinking on the job in an effort to retaliate against her. Plaintiff further alleges that the corresponding investigation that led to her termination was retaliatory. These allegations are at the core of her retaliation claim because evidence showing that she disposed of empty alcohol bottles in the employee restroom would tend to make her claim of retaliatory fabrication far less probable. Accordingly, such evidence not only meets the relevancy standard codified in Federal Rule of Evidence 401, but goes to the heart of Plaintiff's theory of the case.

Defendants have also established that there is a reasonable possibility that DNA testing will yield a match between Plaintiff's DNA and the female DNA profiles found on the Fireball Bottles. *Davis*, 2019 WL 3252747, at *2. Plaintiff argues that no reasonable possibility exists because she has "unequivocally denied drinking alcohol" on the job, and only one staff member reported that Plaintiff smelled of alcohol on January 26, 2024. (Plf. Br. at 28-29.) However, as detailed in Defendants' Motion, both Ms. Mirandi and Ms. Scott reported that Plaintiff smelled like alcohol on the day the Fireball Bottles were found, and several staff member reports suggested Plaintiff left the office in the middle of the workday to go to the store and returned carrying a brown paper bag. (ECF No. 89-1 at 6-7.) Moreover, as Plaintiff herself testified, this was not the first time she had been accused of smelling like alcohol or being intoxicated while on the job. (ECF No. 89-6, Pl. Dep. 252:17-

25.) Forensic testing found DNA on the Fireball Bottles attributable to two different female contributors, and Ms. Perrini and all female lab workers were ruled out as possible sources. (ECF No. 89-1 at 9-10.) While Plaintiff raises vague and unsupported allegations that delays in testing may have resulted in "degradation" or "spoliation," (Plf. Br. at 29), nothing in her brief refutes the fact that DNA was, in fact, found on the Fireball Bottles, and that Plaintiff's submission to a DNA test would allow a lab to determine with a high degree of probability whether her DNA is on the Fireball Bottles. (ECF No. 89-1 at 17.)[1] Specifically, with Plaintiff's DNA sample, the lab can determine whether Plaintiff is a member of the <1% of the population that shares the DNA profile located on the Fireball Bottles. (Young Decl., ¶ 5.)

Finally, Plaintiff does not refute Defendants' contention that a buccal swab would only be minimally intrusive on her privacy rights, and that the Court can enter an order limiting the use of the DNA testing results. (ECF No. 89-1 at 18.) Rather, she castigates Defendants' request for this centrally important evidence as "retaliatory in nature," and speculates that "one can only imagine what Defendants would do if provided with [Plaintiff's] DNA." (Plf. Br. at 29.) However, as detailed above and in their Motion, Defendants seek DNA testing to defend against Plaintiff's

---

[1] Plaintiff's argument that all female office employees should be required to undergo DNA testing before the Motion to Compel is granted is a red-herring; only her DNA is needed to test whether she matches the DNA found on the Fireball Bottles.

claim that the Fireball Bottles are part of Defendants' retaliatory "nefarious scheme" to fabricate grounds for her termination, and are amenable to an order prohibiting unnecessary disclosure of the test results. Accordingly, the Court should grant the Defendants' Motion to Compel, as it will provide for uniquely probative evidence on factual claims central to Plaintiff's theory of liability while only marginally impacting Plaintiff's rights.

B. Plaintiff's Record Mischaracterizations Are Red Herrings

Rather than confront the fact that a comparison between Plaintiff's DNA and the DNA located on the Fireball Bottles would shed light on factual issues at the core of this case, Plaintiff creates distractions by mischaracterizing the evidentiary record and the procedural history. For instance, Plaintiff falsely claims that "Defendants waited until months after fact discovery closed to demand that [Plaintiff] provide a DNA sample." (Br. at 30.) Rather, Defendants requested Plaintiff cooperate with forensic testing of the Fireball Bottles as early as January 5, 2026, and have actively kept Plaintiff and the Court apprised of the progress the forensic testing. (*See, e.g.*, ECF No. 82 at 10, 16; ECF No. 85 at 2-3; ECF No. 89-2 at ¶¶ 8-16.) After testing located testable DNA on the Fireball Bottles, the Court granted Defendants leave to file their Motion to Compel DNA Testing (ECF No. 87.)

Also contrary to Plaintiff's assertions, the record does not support her claim that "Optum's 'upper management' decided to terminate [Plaintiff] within ***minutes***

of her hostile work environment complaint to HR." (Plf. Br. at 11.) Plaintiff filed a complaint with Human Resources on January 4, 2024, that she herself labeled "hostile work environment." (*See* ECF No. 95-2, Plaintiff Dep. 170:4-172:15.) But Plaintiff omits that she did not provide the details to support that complaint – including against whom it was made – until January 19, 2026, when she spoke with Celeste Utley from Optum's Human Resources team. (*Id.* at 172:16-175:4.) During the interim period, Ms. Utley left Plaintiff one voicemail and an email to obtain the details of the initial complaint Plaintiff had lodged. (*Id.*) As such, Plaintiff's accusation that Dr. Tekriwal or anyone at Optum decided to terminate Plaintiff in retaliation for this complaint is false. Of course, Plaintiff's contention also ignores that abundant record testimony form Defendants' witnesses explaining that Plaintiff was ***not*** terminated because of her HR complaint, but because of an intervening event (Plaintiff's conduct during Optum's internal investigation into her suspected alcohol use at work).

Moreover, Plaintiff's claim that "[i]t is undisputed based on the testimony of Dr. Mody, and his text messages with Dr. Tekriwal, that Mody made the decision to terminate [Plaintiff] on January 4, 2024, at 9:50 a.m.," is outrageous, as it ignores ample testimony, including from Dr. Mody himself, that Dr. Mody played no role in

the termination decision. (*See* ECF No. 95-6, Mody Dep. 14:14-15:16.)[2] Regardless, even if the fact finder could infer from the evidence cited by Plaintiff that Optum decided to terminate Plaintiff on January 4, 2024—a proposition Defendants dispute and will address in summary judgment briefing—this provides no basis to keep the DNA evidence out of the record.

Additionally, Plaintiff repeatedly accuses Defendants of violating the parties' Discovery Confidentiality Agreement, so ordered by the Court, suggesting that this conduct reflects "malice" and a disregard for Plaintiff's privacy. (*E.g.*, Plf. Br. at 29.) However, ***Defendants*** marked the documents Plaintiff identifies as confidential, not Plaintiff, and the subject agreement explicitly provides that "[t]he Parties specifically reserve the right to withdraw any confidentiality designation on any document or information they produce in this litigation." (ECF No. 37 at ¶ 4.) Moreover, Defendants filed the subject documents with the Court in connection with this litigation, and not for any improper purpose. In short, the Defendants did not violate the Court's order, or unduly interfere with Plaintiff's privacy rights. Plaintiff's contentions otherwise are red herrings that should be ignored.

---

[2] Plaintiff's spurious allegation that Defendants intentionally "suppressed" text messages (Plf. Br. at 12) lacks any factual support, is wholly false and improper and will not be tolerated.

## III. PLAINTIFF'S LACHES ARGUMENT IS MISPLACED

Plaintiff misunderstands, or misapplies, the doctrine of laches, which is a defense requesting the court to deny relief to a party's otherwise valid claim because the party waited too long to bring that claim forward, and that delay harmed the other party. *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 678 (2014) ("laches is a defense developed by courts of equity; its principal application was, and remains, to claims of an equitable cast for which the Legislature has provided no fixed time limitation.") (citations omitted). In the Third Circuit, laches "consists of two elements: (1) inexcusable delay in bringing suit, and (2) prejudice to the defendant as a result of the delay." *Santana Prods., Inc. v. Bobrick Washroom Equip., Inc.*, 401 F.3d 123, 138 (3d Cir. 2005). Plaintiff here provides no authority that the doctrine of laches can be employed to foreclose a motion to compel discovery.

But even if laches could apply here, it should not. The Court in *Knorr v. Smeal*, 178 N.J. 169 (2003), a case cited by Plaintiff, applied the doctrine to foreclose the defendant's late ***motion to dismiss*** for the plaintiffs' failure to file a timely affidavit of merit, where the defendant did not act on that failure for more than 14 months after the filing deadline, despite knowing that a co-defendant had timely filed a successful motion. *Id.* at 180–81 ("That doctrine is invoked to deny a party enforcement of a known right when the party engages in an inexcusable and unexplained delay in exercising that right to the prejudice of the other party."). Aside

from a motion to compel being different from a motion to dismiss, this holding is clearly inapplicable to the instant matter where Defendants raised the issue of DNA testing in a timely fashion.

Indeed, Defendants raised the issue of DNA testing with Plaintiff on January 5, 2026, ***promptly after the close of fact discovery***. (*See, e.g.*, ECF No. 82 at 10, 16; ECF No. 85 at 2-3; ECF No. 89-2 at ¶¶ 8-16.) Plaintiff steadfastly refused while Guardian Labs worked to determine whether biological material could even be located to use for DNA testing. (*Id.*) Plaintiff knows this full well and cannot now seriously attribute the delay over these past 10 months to Defendants. Moreover, Plaintiff knew of the existence of the Fireball Bottles ***from the outset of this case.***

Lastly, Plaintiff's arguments – made without any scientific support – about the passage of time[3] negatively impacting the quality of the DNA profiles developed, or the possibility of other biological contributors, go to the ***weight*** of any DNA evidence obtained, not its discoverability. In any event, Guardian Labs ***did*** develop two DNA profiles that can be analyzed against Plaintiff's sample. And the passage of time has no impact on the lab's ability to determine whether Plaintiff is a member

[3] Scientists found and sequenced DNA taken from a tooth and thighbone of a 430,000-year old human-like species whose remains were found in a cave in Spain. https://www.guinnessworldrecords.com/world-records/oldest-extracted-human-dna & https://www.science.org/content/article/oldest-human-dna-contains-clues-mysterious-species?referrer=https%3A%2F%2Fwww.google.com%2F (last accessed November 18, 2026).

of the <1% of the population that shares a DNA profile located on the bottles. (Young Decl., ¶ 5.)

## IV. DEFENDANTS OPPOSE ANY DNA TESTING OF OTHER OFFICE EMPLOYEES

Plaintiff argues that, if she is compelled to provide a DNA sample, then Defendants should be forced to provide samples from all female office employees who worked on January 26, 2024. (Plf. Br. at 27.) This should be rejected.

First, Defendants cannot compel active employees to provide DNA samples. Second, the issue, for purposes of this action, is whether ***Plaintiff*** handled or came into contact with the Fireball Bottles – which she denies – not ***who else*** may have.

## CONCLUSION

For the reasons provided above and in Defendants' Motion to Compel, Defendants have established that Plaintiff's DNA profile is in controversy and that good cause exists to order her to undergo DNA testing to determine whether her DNA appears on the Fireball Bottles. Accordingly, the Defendants respectfully request that the Court grant their motion and deny Plaintiff's cross-motion.

Dated: November 23, 2026

Respectfully submitted,

SEYFARTH SHAW LLP

By: */s/ Joseph M. Vento*
Joseph M. Vento